**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| APPLIED UNDERWRITERS, INC., a Nebraska corporation, *Plaintiff-Appellant*, v. LARRY J. LICHTENEGGER; J. DALE DEBBER; PROVIDENCE PUBLICATIONS, LLC, a California limited liability company, *Defendants-Appellees.* | No. 17-16815 D.C. No. 2:15-cv-02445-TLN-CKD OPINION |

Appeal from the United States District Court
for the Eastern District of California
Troy L. Nunley, District Judge, Presiding

Argued and Submitted December 18, 2018
San Francisco, California

Filed January 15, 2019

Before: MILAN D. SMITH, JR. and JACQUELINE H.
NGUYEN, Circuit Judges, and JANE A. RESTANI,[*]
Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Jane A. Restani, Judge for the United States Court
of International Trade, sitting by designation.

## SUMMARY[**]

### Lanham Act / Civil Procedure

The panel affirmed the district court's dismissal of an action brought by a financial services company under the Lanham Act.

The panel held that the district court abused its discretion when it sanctioned the plaintiff and dismissed the case pursuant to Federal Rule of Civil Procedure 41(b) absent an order requiring the plaintiff to file an amended complaint.

The panel nonetheless affirmed the district court's earlier dismissal for failure to state a claim under Rule 12(b)(6). The panel concluded that defendants' use of plaintiff's trademarks in the title of a webcast seminar and in promotional materials was a nominative fair use because plaintiff's service was not readily identifiable without use of the trademarks, defendants used only so much of the trademarks as was reasonably necessary, and use of the trademarks did not suggest sponsorship or endorsement.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Kimberly A. Jansen (argued), Hinshaw & Culbertson LLP, Chicago, Illinois; Mark Suri, Peter Felsenfeld, Travis Wall, and Spencer Y. Kook, Hinshaw & Culbertson LLP, Los Angeles, California; for Plaintiff-Appellant.

Duffy Carolan (argued), Jassy Vick Carolan LLP, San Francisco, California; Kevin L. Vick and Jean-Paul Jassy, Jassy Vick Carolan LLP, Los Angeles, California; for Defendants-Appellees.

---

**OPINION**

M. SMITH, Circuit Judge:

We are confronted with an appeal of a procedurally curious nature. Plaintiff-Appellant Applied Underwriters, Inc. (Plaintiff) appealed the district court's dismissal of its claims for trademark infringement and unfair competition, on the apparent belief that the court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). When we asked the district court to clarify its grounds for dismissal, however, it explained that it actually dismissed Plaintiff's complaint as a sanction pursuant to Federal Rule of Civil Procedure 41(b).

Although we conclude that the district court abused its discretion when it sanctioned Plaintiff and dismissed the case pursuant to Rule 41(b) absent an order requiring Plaintiff to file an amended complaint, we nevertheless affirm the district court's earlier Rule 12(b)(6) dismissal because the use of Plaintiff's trademarks by Defendants-Appellees Larry J. Lichtenegger, J. Dale Debber, and Providence Publications, LLC (Defendants) constituted nominative fair use.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Factual Background

Plaintiff is "a financial services company that provides payroll processing services and, through affiliated insurance companies, offers programs through which workers' compensation insurance is offered and provided to employers throughout the United States." It began to use the "Applied Underwriters" mark in October 2001, and has continuously used the mark since. Beginning in October 2002, it also began to use the "EquityComp" mark in connection with its workers' compensation insurance services. The U.S. Patent and Trademark Office has issued Plaintiff five relevant trademark registrations: for the "Applied Underwriters" mark, the "EquityComp" mark, and three stylized versions of these marks, two of which appear to depict a St. Bernard:

| Mark | Registration No. |
|---|---|
| APPLIED UNDERWRITERS | 2,651,867 |
| **APPLIED** UNDERWRITERS | 2,777,687 |
| EQUITYCOMP | 2,781,677 |
| Equity Comp | 2,777,688 |
| Applied Underwriters | 2,812,457 |

In its complaint, Plaintiff asserted that these registrations are currently in force and uncontestable, and that it "aggressively advertises and promotes its marks and its services," having "spent millions of dollars advertising" them.

Defendant Providence Publications, LLC publishes various online news sources, including "Workers' Comp Executive" (WCE). WCE features news reports and offers online seminars, some of which feature Defendants Lichtenegger and Debber.

Plaintiff alleged that, beginning in November 2015, Defendants began offering a seminar (both online and on DVD) that "uses the APPLIED UNDERWRITERS and EQUITYCOMP marks in the title of the webcast." The marks were also featured in various promotional materials, including a widely distributed email advertisement. Defendants used these marks "without Applied Underwriters' authority or permission and in reckless disregard of [its] federal trademark registrations and its rights." Plaintiff also claimed that Defendants "specifically and intentionally target[ed] their marketing and advertising . . . to independent brokers and the business organizations that they serve who use Plaintiff's services." In its complaint, Plaintiff averred that "[a]s a result of the likelihood of confusion caused by Defendants' unauthorized use of" the marks, "Defendants are able to attract customers who mistakenly believe that they will attend a program sponsored or affiliated with Applied Underwriters," leading to dilution of the marks.

## II. Procedural Background

Plaintiff filed a complaint asserting causes of action for federal trademark infringement and dilution, false

designation of origin under the Lanham Act, and federal and state unfair competition.  The next day, Plaintiff filed a motion for a temporary restraining order, which the district court denied.

Defendants moved to dismiss under Rule 12(b)(6), arguing that their use of Plaintiff's marks was protected under the First Amendment, constituted nominal fair use, and satisfied the statutory defenses to trademark dilution. Defendants also filed a request for judicial notice that the district court granted in part and denied in part, taking judicial notice only of the DVD of the seminar.  Plaintiff in turn filed an opposition to Defendants' motion to dismiss, accompanied by a declaration and additional evidence not included in its complaint.[1]

On July 6, 2017, the district court granted Defendants' motion to dismiss, concluding that "Defendants' use of the Trademarks is nominative fair use."  At Plaintiff's request, the court granted leave to amend the complaint within 30 days.  The district court docket confirms that Plaintiff neither filed an amended complaint (timely or otherwise) nor announced an intent not to do so.  Consequently, on August 10, 2017, the district court issued a minute order that read: "In light of Plaintiff's failure to file an Amended Complaint pursuant to the Court's Order (ECF No. [31]), this case is hereby DISMISSED.  CASE CLOSED."  The clerk of court

---

[1] Plaintiff did not seek judicial notice of this additional evidence and, as Defendants note, "the District Court did not cite or rely on this evidence in its ruling."  Because this evidence was not part of the complaint or submitted for judicial notice, we will disregard it at this stage.  *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

subsequently entered judgment "in accordance with the Court's Order filed on 8/10/2017."

This appeal followed.  In their briefs, Plaintiff and Defendants disputed whether the district court dismissed Plaintiff's complaint pursuant to Rule 12(b)(6), in which case we would review the sufficiency of the complaint de novo, *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011), or as a sanction under Rule 41(b), which we would review for abuse of discretion, *Yourish v. Cal. Amplifier*, 191 F.3d 983, 986 (9th Cir. 1999).  To remedy this confusion, we remanded

> this case for the limited purpose of allowing the district court to clarify whether the complaint was dismissed as a sanction under Federal Rule of Civil Procedure 41 or for failure to state a claim under Rule 12(b)(6), and, if the final dismissal was intended as a sanction under Rule 41(b), to state the reasoning behind the selection of that sanction.

Before oral argument in this appeal, the district court responded with a clarification order, in which it explained that it dismissed Plaintiff's complaint as a sanction pursuant to Rule 41(b), and analyzed the five pertinent factors as enumerated in *Yourish*.  It concluded that "[t]hree of the five factors strongly favored dismissal, and this Court dismissed the case under Rule 41(b) as a sanction for failure to comply with the Court's order."

## STANDARD OF REVIEW AND JURISDICTION

"We review de novo a district court's dismissal of a complaint under [Rule] 12(b)(6) for failure to state a claim," *Starr*, 652 F.3d at 1205, and "[w]e review the district court's

dismissal of a complaint pursuant to Rule 41(b) for abuse of discretion," *Yourish*, 191 F.3d at 986.  We have jurisdiction pursuant to 28 U.S.C. § 1291—regardless of the basis for the district court's dismissal of Plaintiff's complaint, its entry of judgment constituted a final decision of the court.  *Cf. De Tie v. Orange County*, 152 F.3d 1109, 1111 (9th Cir. 1998) ("The dismissal of an action, even when it is without prejudice, is a final order.").

## ANALYSIS

### I.  Rule 41(b)

Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with . . . a court order"—such as by failing to file an amended complaint after being ordered to do so—"a defendant may move to dismiss the action or any claim against it.  Unless the dismissal order states otherwise, [such] a dismissal . . . operates as an adjudication on the merits." Fed. R. Civ. P. 41(b).  We have noted that "[w]hen a district court dismisses an action because the plaintiff has not filed an amended complaint after being given leave to do so and has not notified the court of his intention not to file an amended complaint, we may deem the dismissal to be for failure to comply with a court order based on Federal Rule of Civil Procedure 41(b)."  *Harris v. Mangum*, 863 F.3d 1133, 1142 (9th Cir. 2017).

In the order clarifying its dismissal of Plaintiff's complaint, the district court analyzed the five factors that must be considered before dismissing a case pursuant to Rule 41(b): "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Yourish*,

191 F.3d at 990 (quoting *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)).**2**  However, the district court did not consider whether Rule 41(b) was even applicable in this case, given that Plaintiff was granted leave—not ordered—to amend its complaint.  We hold that the district court abused its discretion when it invoked Rule 41(b) under these circumstances.

We are not the first panel to address this question.  *See, e.g.*, *Yourish*, 191 F.3d at 986 n.4 ("This approach is somewhat problematic because a plaintiff's failure to amend a complaint is not easily described as disobeying a court order because the plaintiff has the right simply to allow the complaint to be dismissed.").  Decades ago, the Fifth Circuit considered a similar factual scenario and concluded that

> [h]ad the District Judge intended what he wrote literally—that the action was being dismissed because the March order had been "disobeyed"—he would have been guilty of an abuse of his Rule 41(b) discretion to dismiss.  Dismissal of a case for disobedience of a court order is an exceedingly harsh sanction which should be imposed only in extreme cases, and then only after exploration of lesser sanctions.  Failure to amend a complaint after it has been dismissed with leave to amend is not such an extreme

---

**2** "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors and we may review the record independently to determine if the district court has abused its discretion."  *Yourish*, 191 F.3d at 990 (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). Accordingly, the fact that the district court initially dismissed the complaint without any explicit analysis of these five factors did not constitute an abuse of discretion.

> case of disobedience, if it is disobedience at
> all.

*Mann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 488 F.2d 75, 76 (5th Cir. 1973) (per curiam) (citations omitted).  More recently, dissenting in *Brown v. Rawson-Neal Psychiatric Hospital*, Judge Graber concluded that a district court's dismissal with prejudice under Rule 41(b) "was an abuse of discretion for the simple reason that, under our precedents, Plaintiff did not fail to comply with a court order."  840 F.3d 1146, 1150 (9th Cir. 2016) (Graber, J., dissenting).  Judge Graber noted that our precedent makes clear that "[w]hen a district court *requires* a plaintiff to file an amended complaint, the court may dismiss the case under Rule 41(b) if the plaintiff fails to follow the requirement." *Id.*; *see also Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004) ("The failure of the plaintiff eventually to respond to the court's *ultimatum*—either by amending the complaint or by indicating to the court that it will not do so— is properly met with the sanction of a Rule 41(b) dismissal." (emphasis added)); *Yourish*, 191 F.3d at 986 n.2 (noting that the district court order stated that an "[a]mended complaint *shall* be filed within 60 days" (emphasis added)); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992) (stating that the court "ordered" and "required" the filing of a second amended complaint).  However, in *Brown*, as in this case,

> the district court *did not require* Plaintiff to
> file an amended complaint, nor did the court
> require in the alternative that Plaintiff file an
> amended complaint *or* some other specified
> document.   The   court's   order   denying
> Plaintiff's motion for reconsideration merely
> granted leave to amend, with permissive text
> allowing Plaintiff to amend or not . . . .

> Given the court's failure to cite Rule 41(b),
> the permissive wording of its orders, and
> Plaintiff's desire to obtain appellate review of
> the Rule 12(b)(6) dismissal as discussed in
> the motion for reconsideration, he
> understandably hoped for a dismissal, which
> he reasonably thought would be under Rule
> 12(b)(6). After all, the district court never
> ordered Plaintiff to file an amended
> complaint, as the courts had in *Yourish* or
> *Ferdik*. *Leave to amend* was granted; failure
> to amend did not constitute noncompliance
> with a court order. Simply put, there was no
> "ultimatum" within the meaning of our
> precedents, and so the district court abused its
> discretion in dismissing Plaintiff's federal
> claims under Rule 41(b).

840 F.3d at 1151 (Graber, J., dissenting).[3]

We agree with Judge Graber's reasoning. By its plain text, a Rule 41(b) dismissal under these circumstances requires "a court order" with which an offending plaintiff failed to comply. Fed. R. Civ. P. 41(b).[4] Here, there was no

---

[3] Notably, the *Brown* majority did not address this issue and instead based its holding on the plaintiff's failure to raise Rule 41(b) in his opening brief. *See* 840 F.3d at 1148–49. Thus, we are not bound by that case to treat a permissive invitation to amend as a court order requiring amendment.

[4] Rule 41(b) also permits dismissal when a plaintiff fails to prosecute its case or comply with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it."). However, these alternative bases for dismissal are not at issue in this appeal because the district court specifically stated that its dismissal was based on Plaintiff's failure to follow its court order.

such order—the district court did not *require* that Plaintiff file an amended complaint following the initial Rule 12(b)(6) dismissal.  Instead, the court's order concluded as follows: "Plaintiff is GRANTED leave to amend within thirty (30) days of this Order."  The district court did not mandate the filing of an amended complaint, and it did not indicate that failure to do so would result in dismissal of the complaint pursuant to Rule 41(b).  *See Oliva v. Sullivan*, 958 F.2d 272, 274 (9th Cir. 1992) ("The district judge has an obligation to warn the plaintiff that dismissal is imminent.").

The district court's dismissal under Rule 41(b) required noncompliance with a court order.  A grant of leave to amend is not an order to amend.  Therefore, Rule 41(b) did not apply here, and the district court's dismissal on this ground constituted an abuse of discretion.

## II.  How to Proceed?

Having concluded that the district court abused its discretion when it dismissed Plaintiff's complaint as a sanction pursuant to Rule 41(b), we must now determine the proper course of action moving forward.

One option is to remand.  Upon remand, the district court would presumably either again dismiss Plaintiff's complaint under Rule 12(b)(6), based on reasoning articulated in its prior order, or again grant Plaintiff leave to amend—an opportunity of which Plaintiff would not avail itself, given its stated desire to appeal the district court's original Rule 12(b)(6) dismissal.  Remand would therefore require the parties to engage in additional and redundant briefing, and would add years to their litigation.  Nothing substantive would be gained, and "remand . . . would be an unnecessary waste of judicial and litigant resources."  *O'Reilly v. Bd. of Appeals*, 942 F.2d 281, 284 (4th Cir. 1991).

We conclude that remand would not serve the interest of judicial economy, and fortunately, it is not required. As the Supreme Court explained,

> [I]n reviewing the decision of a lower court, it must be affirmed if the result is correct 'although the lower court relied upon a wrong ground or gave a wrong reason.' The reason for this rule is obvious. It would be wasteful to send a case back to a lower court to reinstate a decision which it had already made but which the appellate court concluded should properly be based on another ground within the power of the appellate court to formulate.

*SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943) (citation omitted) (quoting *Helvering v. Gowran*, 302 U.S. 238, 245 (1937)); *see also Alcaraz v. Block*, 746 F.2d 593, 602 (9th Cir. 1984) ("We will affirm the district court's correct legal results, even if reached for the wrong reasons."). Here, we have before us the correct result; as discussed below, Defendants' use of Plaintiff's marks constituted nominative fair use, and thus dismissal was required. We also have the district court's analysis in its Rule 12(b)(6) order, which still stands and has not been altered or retracted. Therefore, we conclude that dismissal of Plaintiff's complaint was the correct legal result, even if the district court reached it for the wrong reason—as a sanction under Rule 41(b)—instead of the correct reason—as a dismissal under Rule 12(b)(6). Accordingly, we do not need to remand the action, and will

instead proceed with analysis of the district court's dismissal pursuant to Rule 12(b)(6).[5]

## III.    Rule 12(b)(6)

Defendants maintain, as the district court concluded, that their use of Plaintiff's marks constituted nominative fair use. We agree.

Pursuant to this defense, the "*nominative use* of a mark— where the only word reasonably available to describe a particular thing is pressed into service—lies outside the strictures of trademark law: Because it does not implicate the source-identification function that is the purpose of trademark, it does not constitute unfair competition." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).[6] *New Kids* held that

---

[5] We note that this approach is consistent with the basic principles of finality that undergird our appellate jurisdiction.  The district court's Rule 12(b)(6) order dispensed with all of Plaintiff's claims, and hence was "a full adjudication of the issues."   *Nat'l Distrib. Agency v. Nationwide Mut. Ins. Co.*, 117 F.3d 432, 433 (9th Cir. 1997).  If not for the court's grant of leave to amend—which, again, Plaintiff has made clear it had no intention of undertaking—the dismissal would have "clearly evidence[d] the judge's intention that it be the court's final act in the matter."  *Id.* (quoting *In re Slimick*, 928 F.2d 304, 307 (9th Cir. 1990)).  Accordingly, we are satisfied that the Rule 12(b)(6) order is sufficiently final for our review, since Plaintiff's refusal to amend ensures that the decision was not "tentative, informal or incomplete," and is thus reviewable. *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1101 (9th Cir. 1998) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)).

[6] Accordingly, although Plaintiff's complaint included various causes of action—including trademark infringement and dilution and federal and state unfair competition—the nominative fair use defense applied to all of its claims. *See Playboy Enters., Inc. v. Welles*, 279 F.3d

> a commercial user is entitled to a nominative fair use defense provided he meets the following three requirements: First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*Id.* (footnote omitted). If the nominative use of a mark satisfies these three factors, then there is no infringement; "[i]f the nominative use does not satisfy all the *New Kids* factors, the district court may order defendants to modify their use of the mark so that all three factors are satisfied." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1176 (9th Cir. 2010).

Although Plaintiff's primary contention is that Defendants' use of its marks failed to satisfy the third *New Kids* factor, it challenges the district court's conclusions as to all three. We will thus consider each factor in turn.

---

796, 806 (9th Cir. 2002) ("Uses that do not create an improper association between a mark and a new product but merely identify the trademark holder's products should be excepted from the reach of the anti-dilution statute."); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994) ("This Circuit has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." (quoting *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir. 1991))).

## A. Whether Plaintiff's Service Was Readily Identifiable Without Use of the Trademarks

Plaintiff contends that "Defendants did not need to use Plaintiff's trademarks to identify their Program."  It concedes that "the Program apparently addresses Plaintiff's workers' compensation product in particular," but nonetheless argues that "Defendants could have come up with another readily understood generic or descriptive name."

The email attached to the complaint demonstrates that Defendants' seminar exclusively critiqued Plaintiff's EquityComp service.  The title of the seminar was "Applied Underwriters' EquityComp® Program Like it, Leave it, or Let it be?" and its subtitle read, "Learn the best strategies for selling, competing with, or helping a prospect out of EquityComp® mid-term."  We have previously determined that a descriptive alternative—such as Plaintiff's proposed "Risk Sharing Workers' Comp Program" or "Captive Workers' Comp Arrangement Program"—need not be employed where use of a mark is necessary to refer to a specific brand or product.  As we explained in *Toyota Motor Sales*,

> Toyota claims . . . the Tabaris could have used a domain name that did not contain the Lexus mark.  It's true they could have used some other domain name like autobroker.com or fastimports.com, or have used the text of their website to explain their business.  But it's enough to satisfy our test for necessity that the Tabaris needed to communicate that they specialize in Lexus vehicles, and using the Lexus mark in their domain names accomplished this goal.

610 F.3d at 1180; *see also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 802 (9th Cir. 2002) ("[T]here is no other way that Ms. Welles can identify or describe herself and her services without venturing into absurd descriptive phrases. To describe herself as the 'nude model selected by Mr. Hefner's magazine as its number-one prototypical woman for the year 1981' would be impractical as well as ineffectual in identifying Terri Welles to the public.").[7]

Such is the case here.  The seminar did not discuss workers' compensation programs generally, but rather Plaintiff's specific offering.  Therefore, Defendants "needed to communicate" that they critiqued the EquityComp program, and so using the mark in the title and description of the program "accomplished this goal."  *Toyota Motor Sales*, 610 F.3d at 1180.

In its reply brief, Plaintiff makes the argument that, even if the use of the *"EquityComp"* mark satisfied the first *New Kids* factor, the use of the *"Applied Underwriters"* mark did not.  Plaintiff suggests that "[t]he addition of the 'Applied Underwriters' mark does nothing to identify the content of the seminar but instead serves solely to create the impression

---

[7] Plaintiff suggests that "Defendants' attempt to apply *Welles* to their seminar is circular" because "[o]n one hand, defendants insist that they could not possibly have described their seminar without using plaintiff's mark," but on the other hand, "if a more generic descriptor could not be used to describe the seminar because the subject of the seminar [was] limited to EquityComp®, then the suggestion of sponsorship is reinforced.  After all, a reasonably prudent consumer could assume that a seminar focused on a single product is sponsored or endorsed by the entity selling that product."  However, this reasoning would essentially vitiate the nominative fair use defense, because it suggests that any time the first *New Kids* factor is satisfied—in other words, when use of a mark is needed for identification purposes—then the third factor could *never* be satisfied, because endorsement would always be presupposed in such cases.

that Applied Underwriters is sponsoring or endorsing a seminar about its own EquityComp® product." It relies on *Playboy Enterprises*, in which we determined that while use of the trademarked phrase "Playboy Playmate of the Year 1981" was permissible because it was needed for identification purposes, use of another potentially protected phrase—"PMOY '81"—was not. 279 F.3d at 804. We reasoned that "[t]he repeated depiction of 'PMOY '81' is not necessary to describe Welles. 'Playboy Playmate of the Year 1981' is quite adequate." *Id.* Here, similarly, Plaintiff suggests that the "EquityComp" mark identified the service that Defendants analyzed in their seminar, and thus the "Applied Underwriters" mark did not serve that function. But this argument falls short. Defendants' use of the "Applied Underwriters" mark was not necessarily redundant because it was used to identify the company that offered EquityComp—a company that was itself critiqued in the seminar. We therefore find this case distinguishable from *Playboy Enterprises*, where use of the "PMOY '81" mark served no additional identification purpose.

Accordingly, because both marks were needed to identify the service (and company) that Defendants analyzed in their seminar, the district court correctly determined that the first *New Kids* factor was satisfied.

## B. Whether Defendants Used Only So Much of the Trademarks As Was Reasonably Necessary

Plaintiff argues that Defendants' use of its marks failed the second factor because the email attached to the complaint featured several uses of both marks. That argument relies on a misunderstanding of this factor. The second *New Kids* factor does not implicate the *number* of uses of a mark, but rather the *nature* of the uses. In clarifying it, we explained that "a soft drink competitor would be entitled to compare

its product to Coca-Cola or Coke, but would not be entitled to use Coca-Cola's distinctive lettering." *New Kids*, 971 F.2d at 308 n.7; *see also Playboy Enters.*, 279 F.3d at 802 ("Welles' banner advertisements and headlines satisfy this element because they use only the trademarked words, not the font or symbols associated with the trademarks."); *Volkswagenwerk Aktiengesellschaft v. Church*, 411 F.2d 350, 352 (9th Cir. 1969) (noting that defendant "did not use Volkswagen's distinctive lettering style or color scheme, nor did he display the encircled 'VW' emblem"); *cf. Toyota Motor Sales*, 610 F.3d at 1181 ("Toyota suggests that use of the stylized Lexus mark and 'Lexus L' logo was more use of the mark than necessary and suggested sponsorship or endorsement by Toyota. This is true: The Tabaris could adequately communicate their message without using the visual trappings of the Lexus brand."). Our case law demonstrates that analysis of this factor should focus not on the number of uses of Plaintiffs' marks, but on whether Defendants used more of each individual mark than was necessary in terms of font and stylization.

Here, Defendants correctly note that the email "did not use any part of Plaintiff's service marks, the distinctive lettering or design; rather they used only the term 'Applied Underwriters' and 'EquityComp' in describing its webcast." The email did not contain, for example, the illustration of a St. Bernard or the stylized lettering of Plaintiff's registered marks. It did not even employ the distinctive small-caps rendering of the "APPLIED UNDERWRITERS" and "EQUITYCOMP" marks. Defendants used only the words themselves, which were, as discussed above, necessary to identify Plaintiff's product. Therefore, the second *New Kids* factor was satisfied.

## C. Whether Use of the Trademarks Suggested Sponsorship or Endorsement

Plaintiff asserts that, "[s]imply put, Defendants' advertising creates confusion."

At the outset, it claims that "[t]he district court erred by ignoring Plaintiff's evidence of actual confusion in its Order, which nowhere mentions the actual confusion." However, in its complaint, Plaintiff pleaded no such facts of actual confusion. Instead, the complaint stated only that "Defendants' improper use of the APPLIED UNDERWRITERS IP has caused, and will continue to cause, damaging and actual confusion among the public." That conclusory statement constituted the only evidence of confusion contained in the complaint, and at no other point did Plaintiff plead facts suggesting that use of its marks led consumers to assume that it sponsored or endorsed Defendants' seminar.[8]

Plaintiff also notes that Defendants employed the ® registration symbol in conjunction with their uses of the "Applied Underwriters" and "EquityComp" marks, which it claims "makes the use of the trademark look more official or authorized, because one would expect that the trademark owner or its authorized users would use the registration symbol ®, not unauthorized users." This is not a particularly compelling argument. Although Defendants did use the ® symbol, the email attached to the complaint clarified that

---

[8] In its opposition to Defendants' motion to dismiss, Plaintiff referenced a "confused potential customer" who reached out to it. However, that allegation was *not* included in the complaint, and so it cannot be considered. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[E]xtraneous evidence should not be considered in ruling on a motion to dismiss.").

"EquityComp is the registered trademark of Applied Underwriters, Inc."[9] Moreover, in the body of the email (and on the DVD cover), the title of the seminar—which did feature both the "Applied Underwriters" and "EquityComp" marks—was in regular font beneath a stylized logo for WCE:



This further suggested that it was WCE—*not* Plaintiff—that sponsored the seminar, which discounts the possibility of any confusion.

Furthermore, Defendants correctly argue that any likelihood of confusion is implausible due to the content of

---

**[9]** At least one district court has dismissed a trademark infringement claim under similar circumstances. *See Architectural Mailboxes, LLC v. Epoch Design, LLC*, No. 10cv974 DMS (CAB), 2011 WL 1630809, at *3 (S.D. Cal. Apr. 28, 2011) ("[T]he exhibits attached to the Complaint lead to the same conclusion, namely that Plaintiff has failed to allege sufficient facts to demonstrate a likelihood of confusion. The excerpts from Defendant's website clearly identify Plaintiff as the manufacturer of the Oasis Jr. mailbox. The website even goes so far as to state, 'Oasis® is a registered trademark of *Architectural Mailboxes*.'" (citation omitted)).

the email and the seminar itself.  The text of the email referred to EquityComp as a "sophisticated yet controversial program," and Lichtenegger was billed as a lawyer who "for 15 years has specialized in Investment and Commercial Fraud recovery" and "represents a panoply of employers vs Applied and is well versed in their math and how their program works."  Debber, for his part, was credited as the person "who broke the recent spate of stories about Applied Underwriters' EquityComp Program.  Only that other mild mannered reporter, Clark Kent, exceeds Dale's commitment to 'Truth, Justice and the American Way.'"  The seminar's subtitle advertised that users can "[l]earn the best strategies for . . . helping a prospect out of EquityComp® mid-term," and a reasonable consumer in this context would surely understand that Plaintiff would not be in the business of helping customers *out of* its programs.[10]

We have held that criticism of a product tends to negate the possibility of confusion as to sponsorship and endorsement.  *See New Kids*, 971 F.2d at 308–09 ("[N]othing in the announcements suggests joint sponsorship or endorsement by the New Kids.  The *USA Today* announcement implies quite the contrary by asking whether the New Kids might be 'a turn off.'").[11]  Here, it

---

[10] Additionally, the list of questions that the seminar purportedly answered included several that Plaintiff would be unlikely to field, such as "If you have a client in the program who is unhappy, should you get them out and if so, how to know *when*?" and "How to compete against the program—at the start and mid-term."

[11] District courts have reached similar conclusions.  *See, e.g.*, *1800 GET THIN, LLC v. Hiltzik*, No. CV11-00505 ODW (PJWx), 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011) (determining on motion to dismiss that "Defendants have not done anything that would suggest Plaintiff has sponsored or endorsed Defendants' use of Plaintiff's claimed trademark because the articles and comments . . . do not portray

was clear from the text of the email that the seminar was a critique of Plaintiff's program, and it is simply not plausible that it could have been construed as anything else.

It is true, as Plaintiff notes, that "[t]he existence of consumer confusion is a fact-intensive analysis that does not lend itself to a motion to dismiss." *See, e.g.*, *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). Even so, based on the critical nature of the presentation, the disclaimer included in the text, and the fact that Defendants advertised the seminar under the WCE banner, we cannot conclude that a "reasonably prudent consumer" in the relevant marketplace, *Toyota Motor Sales*, 610 F.3d at 1176, could have interpreted Defendants' seminar as being endorsed or sponsored by Plaintiff. The complaint contained only scant, conclusory allegations of consumer confusion, which, even when considered in the light most favorable to Plaintiff, were belied by the allegedly infringing email attached to the complaint, which demonstrated nominative fair use. Although Plaintiff introduced additional evidence that might change this conclusion in its opposition to Defendants' motion to dismiss, those additional facts cannot be considered because they were not included in the operative pleading. The third *New Kids* factor was therefore satisfied.

---

Plaintiff in a positive light"); *Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*, No. C 96-2703 TEH, 1997 WL 811770, at *4 (N.D. Cal. Dec. 18, 1997) ("The third and final requirement is met because nothing in Anthony DeBartolo's website could possibly be construed to indicate Patmont's sponsorship or endorsement. Indeed, the Court would find incredible any argument to the contrary given the website's disparagement of Go-Peds as unsafe and of Patmont management as criminally anti-competitive.").

## D.  Summation

Although it is a "rare situation in which granting a motion to dismiss is appropriate" when a case involves questions of consumer confusion, *Williams*, 552 F.3d at 939, the district court properly concluded that Plaintiff failed to state claims for which relief could be granted because, on the face of the complaint, it was clear that Defendants' alleged infringement constituted nominative fair use.

## CONCLUSION

We conclude that the district court abused its discretion when it dismissed Plaintiff's complaint as a sanction pursuant to Rule 41(b) without actually ordering Plaintiff to amend its complaint.  However, we also conclude that dismissal was nevertheless appropriate, because Defendants' use of Plaintiff's marks constituted nominative fair use.  Accordingly, we AFFIRM the district court's dismissal of Plaintiff's complaint.