NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MYA HENDRIX, an individual, | No. 22-55732 |
| Plaintiff-Appellant, | D.C. No. 3:20-cv-00045-TWR-NLS |
| v. | |
| CITY OF SAN DIEGO, a public entity; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Southern District of California
Todd W. Robinson, District Judge, Presiding

Argued and Submitted August 13, 2024
Pasadena, California

Before: EBEL,** BADE, and FORREST, Circuit Judges.

Mya Hendrix (Mya) appeals the district court's dismissal of her complaint for

failure to state a claim and for noncompliance with a court order. We have

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, and remand for further proceedings.

We review de novo a district court's dismissal of a complaint for failure to state a claim. *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1025 (9th Cir. 2021). "[W]e accept 'as true all well-pleaded allegations of fact in the complaint' and construe them in the light most favorable to the non-moving party." *Karasek v. Regents of the Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (citation omitted). To avoid dismissal, a complaint must "contain[] sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* (citation omitted).

**1. *State-Law Claims.*** Mya sued emergency dispatchers Sue Marvin (Marvin), Toneth Davis (Davis), and Laura Orozco (Orozco) for gross negligence and bad faith, and the City of San Diego (the City) for vicarious liability. California has not defined the term bad faith as used in the relevant statute. *Arista v. County of Riverside*, 241 Cal. Rptr. 3d 437, 447 (Cal. Ct. App. 2018) (noting the lack of definition in Cal. Health & Safety Code § 1799.107(b) and analyzing only gross negligence). Because we conclude that bad faith is less relevant to this case, our analysis focuses on gross negligence. To state a gross negligence claim, however, a plaintiff must plead "the traditional elements of negligence: duty, breach, causation, and damages" and "allege extreme conduct on the part of the defendant." *Rosencrans v. Dover Images, Ltd.*, 122 Cal. Rptr. 3d 22, 31 (Cal. Ct. App. 2011).

The district court dismissed Mya's state-law claims against the dispatchers and the City with prejudice because the dispatchers did not owe her a duty of care under the special relationship doctrine.[1] We disagree as to Marvin.

Generally, emergency-rescue personnel have "'no duty to come to the aid of another,' absent some special relationship between the parties." *Eastburn v. Reg'l Fire Prot. Auth.*, 80 P.3d 656, 659 (Cal. 2003) (citation omitted). While the cases finding a special relationship between a state actor and a victim are rare, such a relationship has been found where a state actor "created or increased a [victim's] peril by affirmative acts." *M.B. v. City of San Diego*, 284 Cal. Rptr. 555, 557 (Cal. Ct. App. 1991).

The operative complaint sufficiently alleges that Marvin increased Mya's danger by convincing her mother Misti Hendrix (Misti) that Mya's kidnapping was a scam and that Misti should not pay the demanded ransom. Marvin told Misti that Mya's situation sounded "exactly" like a scam that dispatchers commonly received. Then, after learning about Mya's drug addiction, Marvin stated that "you cannot trust" an addict and that she could "almost guarantee" that Misti would receive another call "ask[ing] for more" if Misti sent Mya the ransom. Marvin directed Misti not to "enable [Mya]" by "sending her money." Mya alleges that Marvin's statements and instruction caused Misti to doubt the legitimacy of Mya's kidnapping

---

[1]Defendants only argue for affirmance based on a lack of duty.

3

and to not pay the ransom, which angered the kidnappers and increased Mya's danger. At the pleading stage, these allegations were sufficient to plausibly state that Marvin created a special relationship between herself and Mya by increasing Mya's danger. Thus, we reverse the dismissal of Mya's state-law claim against Marvin and the related vicarious-liability claim against the City.

For the other two dispatchers, we conclude that Mya's factual allegations were insufficient to support her claims. Davis merely advised Misti that she could not assist Misti, provided Misti with the non-emergency number, and hung up. Without more, Davis's refusal to help is not actionable. *See Eastburn*, 80 P.3d at 659. Orozco tried to explain Davis's behavior by stating that dispatchers were receiving many kidnapping-scam calls. Orozco then told Misti to call the emergency line if she confirmed "something[] [was] wrong" or obtained Mya's location. In providing this explanation, Orozco did not tell Misti that Mya's kidnapping was a scam or that Misti should not take further action or pay the ransom. Mya's allegations do not show that Davis or Orozco expanded upon Marvin's "scam theory," only that they failed to dispel it. This is insufficient to plausibly state that either of these dispatchers created a special relationship with Mya. We affirm the district court's dismissal of Mya's state-law claims against Davis and Orozco and her related claims against the City.

4

**2.** *Federal Claims.* Mya asserted claims under 42 U.S.C. § 1983 for substantive due process violations and for municipal and supervisory liability. The district court initially dismissed these claims with 30 days' leave to amend under Rule 12(b)(6), but when Mya failed to timely amend her complaint, the district court dismissed her claims under Rule 41(b).

We review a Rule 41(b) dismissal for abuse of discretion. *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir. 2019). A district court abuses its discretion by dismissing a plaintiff's claims under Rule 41(b) without a prior order requiring amendment. *Id.* at 887. In this case, the district court neither required amendment nor warned Mya that her failure to amend would result in a Rule 41(b) dismissal. The district court merely granted Mya leave to amend. Under these circumstances, Rule 41(b) did not apply. *See id.* at 890, 892. We nevertheless affirm the district court's dismissal of Mya's federal claims because her operative complaint is insufficient under Rule 12(b)(6).

To state a § 1983 claim, a plaintiff must allege that she was deprived of a federal constitutional right "by a person acting under color of state law." *Murguia v. Langdon*, 61 F.4th 1096, 1106 (9th Cir. 2023) (citation omitted). Generally, "members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007). The state-created danger doctrine provides an

5

exception to this rule. *Id.* To invoke this exception, a plaintiff must prove that (1) a state actor "create[d] or expose[d] [the plaintiff] to a danger which he or she would not have otherwise faced," *id.* (citation omitted); "(2) the danger was known or obvious; and (3) the [state actor] acted with deliberate indifference to that danger," *Momox-Caselis v. Donohue*, 987 F.3d 835, 845 (9th Cir. 2021). The danger must have been "actual" and "particularized," and the ultimate injury "must have been foreseeable." *Pauluk v. Savage*, 836 F.3d 1117, 1125 (9th Cir. 2016) (citation omitted).

For the same reasons that Mya's operative complaint sufficiently alleged a special relationship between her and Marvin, it also adequately alleged that Marvin increased Mya's danger under the state-created danger doctrine.[2] Further, Mya's injuries were objectively foreseeable. That is, it was foreseeable that Marvin might be wrong that the kidnapping was a scam, that instructing Misti not to pay the ransom would influence Misti's behavior, and that, as a result, Mya's danger would increase. Mya's allegations fail, however, to demonstrate that Marvin subjectively recognized that risk. Deliberate indifference requires that a state actor "know[] that something is going to happen but ignore[] the risk and expose[] [the plaintiff] to it." *Murguia*, 61 F.4th at 1111 (alterations in original) (citation omitted). Mya alleged that Marvin

---

[2]Likewise, Mya's operative complaint failed to adequately allege that Davis and Orozco increased her danger under the state-created danger doctrine for the same reasons it failed to allege a special relationship between them and Mya.

6

believed that the kidnapping was a scam and convinced Misti of the same. If Marvin herself was convinced that the situation was a scam, she could not have *known* that convincing Misti not to pay the ransom would risk exposing Mya to greater danger. The district court properly dismissed Mya's § 1983 claims against the dispatchers.

Because Mya failed to state a claim against the dispatchers for any underlying constitutional violation, her municipal liability claims against the City and supervisory liability claims against Roxanne Cahill and David Nisleit necessarily failed. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001).

**AFFIRMED in part, REVERSED in part, and REMANDED.**[3]

---

[3]Each party shall bear its own costs on appeal. Fed. R. App. P. 39(a)(4).