**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JONATHAN C. CAPP; N.C., a minor, by and thru their Guardian ad litem; J.C., a minor, by and thru their Guardian ad litem,
*Plaintiffs-Appellants*,

v.

COUNTY OF SAN DIEGO; KATHY JACKSON; BOB PROKESCH; JOHANNA FIRTH; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY,
*Defendants-Appellees.*

No. 18-55119

D.C. No.
3:16-cv-02870-AJB-MDD

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted July 10, 2019
Pasadena, California

Filed August 30, 2019

Before:  MILAN D. SMITH, JR. and MICHELLE T. FRIEDLAND, Circuit Judges, and STANLEY A. BASTIAN,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[**]

### Civil Rights

The panel affirmed in part and reversed in part the district court's dismissal of plaintiffs' claims as insufficiently pled in an action brought by Jonathan Capp and his two minor children arising from a child welfare investigation undertaken by County of San Diego social workers that allegedly violated plaintiffs' First, Fourth, and Fourteenth Amendment rights.

Plaintiffs asserted, in part, that social workers retaliated against Capp in violation of the First Amendment after he questioned abuse allegations against him and criticized the County.  Plaintiffs asserted that defendants placed Capp on the Child Abuse Central Index and coerced his ex-wife to file an ex parte custody application.

The panel first rejected the retaliation claim premised on the Child Abuse Central Index listing.  The panel held that

---

[*] The Honorable Stanley A. Bastian, United States District Judge for the Eastern District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

taking the allegations as a whole, the first amended complaint did not plausibly allege that Capp was placed on the Index as intentional retaliation. Focusing on plaintiffs' allegation that defendant social worker coerced Capp's former wife to file the ex parte custody application, the panel found that pursuant to the liberal pleading standard afforded pro se litigants, plaintiffs plausibly alleged that Capp engaged in protected activity, that the alleged retaliation would objectively have had a chilling effect and that retaliation was the but-for motive for the social worker's actions. Plaintiffs therefore pleaded a plausible First Amendment retaliation claim. The panel further concluded that the accused defendant social worker was not entitled to qualified immunity. The panel held that a reasonable official would know that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment.

The panel held that the district court properly dismissed plaintiffs' Fourth Amendment and Fourteenth Amendment claims, and claims brought pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which alleged that defendants interviewed the minor children while they were at school without Capp's consent. The panel held that the first amended complaint contained no facts as to whether the interviews were conducted without either parent's permission, the length of the interviews, or the specific circumstances of the interviews. Moreover, the panel held that even if plaintiffs had pleaded a plausible Fourth Amendment claim, defendants would be entitled to qualified immunity because the right of minor children to be free from unconstitutional seizures and interrogations by social workers had not been clearly established.

Rejecting the Fourteenth Amendment substantive due process claim, the panel held that although Capp might have been subjected to an investigation by the County's Health and Human Services Agency, that alone was not cognizable as a violation of the liberty interest in familial relations. The panel rejected the *Monell* claim, concluding that plaintiffs failed to plead a plausible constitutional violation stemming from defendants' interviews with the children. Moreover, even if plaintiffs had pleaded a plausible Fourth Amendment claim, the first amended complaint ascribed defendants' alleged misconduct to official policy in a conclusory fashion that was insufficient to state a viable claim.

## COUNSEL

Jonathan Charles Capp (argued), Law Offices of Jonathan C. Capp, San Diego, California, pro se Plaintiff-Appellant.

Christina Snider (argued), Senior Deputy; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

Plaintiffs Jonathan Capp and his children, N.C. and J.C., assert § 1983 and *Monell* claims against Defendants County of San Diego (the County); the County's Health and Human Services Agency (the Agency); and Kathy Jackson, Bob Prokesch, and Johanna Firth, social workers employed by the Agency. The action stems from a child welfare investigation undertaken by Defendants that allegedly violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights.

The district court dismissed all of Plaintiffs' claims as insufficiently pleaded or barred by qualified immunity. We agree that Plaintiffs' first amended complaint (FAC) fails to plausibly allege Fourth Amendment, Fourteenth Amendment, and *Monell* claims. We also conclude, however, that Plaintiffs plead a viable First Amendment retaliation claim, and that Defendants are not entitled to qualified immunity on this claim.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Background

The facts as presented are derived from Plaintiffs' FAC. For purposes of our analysis, we accept the allegations as true. *See Karam v. City of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003).

Capp is the father of two minor children, N.C. (age 11 at the time Plaintiffs filed their FAC) and J.C. (age 9), whose legal custody he shares with their mother, Debora. Capp and

Debora were in the midst of divorce proceedings at the time of Defendants' investigation.

On August 13, 2015, the Agency received a referral alleging that N.C. and J.C. "may be at-risk of General Neglect, Severe Neglect, and Emotional Abuse by Jonathan Capp." Firth, a social worker, informed Capp that "she wished to speak with him regarding his children and referenced a substance abuse problem"; the two arranged a meeting for August 26. During that meeting, Capp learned that Firth had interviewed N.C. and J.C. at their elementary school "without [Capp's] consent." Although Capp repeatedly asked for clarification regarding the allegations against him, Firth was evasive and "unilaterally terminated the interview."

That same day, Capp sent a letter to the Agency, calling the interview "Kafkaesque" and deeming the "offensive allegations (whatever they may be) [] ***bogus and extremely offensive***." The letter chastised Firth for "fle[eing]" the meeting, and for "interview[ing Capp's] children without [his] consent." Capp concluded, "In any event, be in no doubt that if you continue on your unlawful and unconstitutional course I will take this matter even further."

Soon after, Capp learned that Debora's attorney "had instructed her client to withhold custody of the children pursuant to 'instructions from [the Agency],'" which had apparently told Debora to "apply ex-parte to the San Diego family court . . . to take custody from [Capp]." Indeed, a declaration from Debora filed with the application read in part,

> Firth gave me a letter . . . advising me not to force our children to visit with their father. It was suggested strongly to me that I seek legal

action immediately to keep our children safe. They have been indicating to me that they do not want to see their father, who is often angry with them, yells at them, calls them names (such as "spoiled" and "b—"), and scares them.

Subsequently, the family court "denied the application and rebuked [the Agency]." Capp spoke with Jackson, Firth's supervisor, who assured him that she "would make sure that all appropriate procedures would be followed" and that "the case would be closed." Prokesch later interviewed Capp and "could not in any way articulate any serious (or even significant or any) allegations against [him]," though Prokesch did mention an allegation that Capp "may have driven the children in a car whilst under the influence." Eventually, Jackson, Firth, and Prokesch signed a letter to the court indicating that the evidence against Capp was "inconclusive." The Agency then closed the referral.

The closing of the referral notwithstanding, Capp later received a letter from the Agency informing him that "the allegations of abuse or severe neglect" were, in fact, "substantiated," and that Capp had consequently been placed on the Child Abuse Central Index (CACI).[1] After Capp complained to Jackson and others, another employee of the Agency allegedly "confirmed again that he was on the CACI register but that she would recommend that he be taken off."

---

[1] The CACI is an index of child abuse maintained pursuant to the California Child Abuse and Neglect Reporting Act, which requires that agencies "forward to the Department of Justice a report in writing of every case it investigates of known or suspected child abuse or severe neglect that is determined to be substantiated." Cal. Penal Code §§ 11164, 11169–70.

Capp was later informed that "due to a clerical or administrative error or issue," he "had not been placed on the CACI at all," despite his having been informed otherwise. He eventually received a letter from the Agency confirming that his "name has not been listed on the [CACI]."

## II. Procedural History

Plaintiffs filed their initial complaint in November 2016. The district court granted Defendants' first motion to dismiss with leave to amend, and Plaintiffs subsequently filed the FAC.

Plaintiffs' § 1983 claim asserts in part that Defendants retaliated against Capp in violation of the First Amendment. They allege that after Capp exercised his First Amendment rights by questioning the abuse allegations against him and the legal basis for Firth's interviews, and then by lodging various criticisms against the County, Firth "coerced" Debora to file the ex parte application and, together with Jackson and Prokesch, placed him on the CACI. They also allege that these actions, and the investigation generally, violated Capp's Fourteenth Amendment right to familial association, and that the interviews with the children violated their Fourth Amendment right to be free from unreasonable seizure. Plaintiffs also assert a cause of action pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), based on the County's alleged "policy of detaining and interviewing children without exigent circumstances . . . , court order or consent of their parent," in violation of the Fourth Amendment.

Defendants again moved to dismiss, and the district court granted the motion as to all causes of action except the First Amendment retaliation claim. As to this remaining claim, the district court concluded that, "[w]hile there is no

precedent directly on point that allows First Amendment retaliation claims to go forward against social workers," Firth and Prokesch could not claim qualified immunity because "[r]easonable social workers in Defendants' positions know or should know that baselessly taking action that could lead to a child being wrongfully removed from its parents would [run] afoul of the First Amendment."

Defendants then filed a motion for reconsideration, contending that the district court's qualified immunity analysis had been flawed. The court agreed, concluding that "there was [] no clearly established law at the time denoting defendants' specific actions in this case as unlawful," and therefore that "qualified immunity [] attache[d]" to both Firth and Prokesch. All claims having been dismissed, the district court entered final judgment, and this timely appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291.

"We review de novo a district court's dismissal of a complaint under [Federal Rule of Civil Procedure] 12(b)(6) for failure to state a claim." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 (9th Cir. 2019) (quoting *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011)). "When ruling on a motion to dismiss, we accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). The allegations "must 'plausibly give rise to an entitlement to relief.'" *Dougherty v. City of Covina*, 654 F.3d 892, 897 (9th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). We have emphasized that pro se pleadings, such as the FAC in this case, are to be liberally

construed on a motion to dismiss. *See, e.g.*, *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

We review a grant of qualified immunity de novo. *Entler v. Gregoire*, 872 F.3d 1031, 1038 (9th Cir. 2017).

## ANALYSIS

## I.  First Amendment Retaliation Claim

After considering Defendants' motion for reconsideration, the district court concluded that qualified immunity attaches to this claim.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and, "[w]hen properly applied, [] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The Supreme Court has articulated a discretionary

> two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue

was "clearly established" at the time of defendant's alleged misconduct.

*Pearson*, 555 U.S. at 232 (citations omitted) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Accordingly, we first consider whether Plaintiffs plausibly plead a violation of a constitutional right, before deciding whether that right was clearly established.

## A. Violation of a Constitutional Right

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (quoting *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006)). To ultimately "prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 259 (2006)). Specifically, a plaintiff must show that the defendant's retaliatory animus was "a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260).

Plaintiffs premise their First Amendment retaliation claim on two allegedly retaliatory actions: (1) Firth's coercing Debora to file the ex parte custody application, and (2) Firth's, Prokesch's, and Jackson's placing Capp on the CACI.

At the outset, we reject Plaintiffs' retaliation claim premised on the CACI listing. In ruling on Defendants' motion to dismiss, the district court concluded that the FAC did not actually plead that Capp was ever placed on the CACI. We agree that, taking the allegations as a whole, the FAC does not plausibly allege that Capp was placed on the CACI as intentional retaliation. According to the FAC, Capp was twice informed that he had never been placed on the CACI, so the more plausible inference to draw from the FAC is that Capp was either never listed on the CACI, or that he was briefly and accidentally listed and then promptly removed. Thus, even if Capp might have "reasonably believed that he had been placed on the register," this does not give rise to Plaintiffs' retaliation claim, since such a belief is distinct from actual, intentional placement on the register. Accordingly, even under the liberal pleading standards afforded to the FAC, we cannot accept the CACI listing as a plausible foundation for Plaintiffs' First Amendment retaliation claim.

We therefore focus only on Plaintiffs' allegation that Firth coerced Debora to file the ex parte custody application in retaliation for Capp's criticism.[2]

---

[2] Although the district court apparently interpreted the ex parte application allegation as being directed against both Firth *and* Prokesch, the FAC does not clearly attribute this alleged misconduct to Prokesch. Instead, it reads, "At least Defendant [Firth] coerced the children's mother to file an ex-parte application . . . ." Given this language, and in light of the allegations contained elsewhere in the complaint, we construe this specific claim as being directed against Firth only, and not against Prokesch or any other Defendant.

### i.  Constitutionally Protected Activity

The first *O'Brien* element is satisfied here.  It is well settled that the activity for which Capp was allegedly retaliated against—voicing criticism of the Agency's conduct—is constitutionally protected.  *See Hartman*, 547 U.S. at 256 ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out."); *Ford v. City of Yakima*, 706 F.3d 1188, 1192–93 (9th Cir. 2013) (per curiam) ("While an individual's critical comments may be 'provocative and challenging,' they are 'nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987))), *abrogated on other grounds by Nieves*, 139 S. Ct. 1715.

### ii.  Chilling Effect

Defendants correctly observe that Capp was not muzzled by the ex parte custody application.  The FAC alleges that "[u]pon receiving the ex-parte application," Capp "immediately contacted his State Assembly member . . . and his local San Diego county supervisor . . . to protest what was happening," and "as a result . . . was advised to contact" supervisor Jackson.  Clearly, Capp was not chilled by the alleged retaliation; he continued, and even escalated, his protected activity.

Our inquiry, however, is not whether Defendants' actions actually chilled Capp, but rather whether the alleged retaliation "would chill *a person of ordinary firmness* from continuing to engage in the protected activity."  *O'Brien*, 818 F.3d at 932 (emphasis added) (quoting *Pinard*, 467 F.3d

at 770); *see also id.* at 933 ("The test is generic and objective. Whether O'Brien himself was, or would have been, chilled is not the test."); *Mendocino Envtl. Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) ("Because it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity, we conclude that the proper inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996))). The threat of losing custody of one's children is a severe consequence that would chill the average person from voicing criticism of official conduct. Accordingly, notwithstanding the fact that Capp himself was not chilled by Firth's conduct, we conclude that the alleged retaliation would objectively have had a chilling effect.

### iii.     Substantial or Motivating Factor

The closest issue before us is whether Plaintiffs plausibly plead that Capp's criticism "was a substantial or motivating factor" in Firth's decision to instruct Debora to seek custody of N.C. and J.C. *O'Brien*, 818 F.3d at 932 (quoting *Pinard*, 467 F.3d at 770).

The FAC alleges that Firth "coerced [Debora] to file an ex-parte application in an attempt to strip [Capp] of custody of the children," and that this act was "purely motivated by [Defendants'] desire to retaliate against" Capp. Specifically, Plaintiffs appear to allege that Firth coerced Debora into entering a safety plan—which provided that Debora would seek sole custody—by threatening to "instigate juvenile

proceedings."[3]   Plaintiffs further allege that Defendants "would not have otherwise acted as such but for the activity of [Capp] as described" in the complaint because "there was no objective basis to . . . strip him of custody."

Defendants argue that Plaintiffs "offer[] nothing but suspicion and speculation to support [their] allegations that the social workers' actions were motivated by retaliatory animus." But we have recognized that such speculation is hardly unusual in retaliation cases. *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal.").

More problematic to Plaintiffs' claim is the Supreme Court's admonition that an allegation is not plausible where there is an "obvious alternative explanation" for alleged misconduct. *Iqbal*, 556 U.S. at 682 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007)). Here, in its reconsideration order, the district court concluded that

> [i]t is not entirely clear from Capp's complaint that defendants' motives were to punish Capp for exercising his first amendment rights. . . . A social worker's job is to make recommendations when they fear a minor might be in danger—thus it appears

---

[3] The safety plan attached to the FAC stated that its purpose "is to allow children to remain in their homes pending completion of the investigation by Child Welfare Services (CWS) when one or more Safety Factors are identified." It specified that "Mom plans to keep the children in her care until her Family Court attorney can file for an emergency custody order next week."

to this Court that Firth may have been simply doing her job.

We recognize that social workers like Firth have a legal obligation to investigate allegations of child abuse. *See, e.g.*, Cal. Welf. & Inst. Code § 328 (requiring a social worker to "immediately make any investigation he or she deems necessary" if child abuse is suspected); *cf. Mann v. County of San Diego*, 907 F.3d 1154, 1156 (9th Cir. 2018) (recognizing "the state's interest in protecting children from abusive or neglectful conditions"). Here, Debora's declaration accompanying her ex parte application, which was included in the FAC, stated that Capp's children "ha[d] been indicating . . . that they do not want to see their father, who is often angry with them, yells at them, calls them names . . . and scares them." Defendants contend that, "[b]ased on these statements from Debora alone, it was reasonable for Firth to encourage Debora to seek to limit Capp's custody."

It is true that the allegations about Debora's concerns lead to the inference, which the district court made, that Firth was at least partially motivated by her legal obligations to protect the children. It is also true that if this were Firth's *only* motive, Plaintiffs' First Amendment retaliation claim would necessarily fail because the third *O'Brien* element would not be satisfied.

And yet, we conclude that the mere existence of a legitimate motive, supported though it might be by the FAC, is insufficient to mandate dismissal. If Firth would not have made the recommendation absent retaliatory animus, there could still be a viable retaliation claim. *See O'Brien*, 818 F.3d at 936 ("We have previously made it clear that there is a right to be free from retaliation even if a non-

retaliatory justification exists for the defendants' action."). And Plaintiffs have plausibly alleged that retaliatory animus was a but-for cause of Firth's actions.

We find instructive the Supreme Court's decision in *Nieves*. There, the Court held that plaintiffs bringing "First Amendment retaliatory arrest claims" must generally "plead and prove the absence of probable cause." *Nieves*, 139 S. Ct. at 1723. In "retaliatory arrest cases," the Court explained, there is "a tenuous causal connection between the defendant's alleged animus and the plaintiff's injury." *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 668 (2012)). "[P]rotected speech is often a 'wholly legitimate consideration' for officers when deciding whether to make an arrest," given that "a suspect's speech may convey vital information" like whether the suspect is willing to cooperate. *Id.* at 1724 (quoting *Reichle*, 566 U.S. at 668). If the plaintiff demonstrates that the arresting officer lacked probable cause, that showing bridges the causal gap by "reinforc[ing] the retaliation evidence and show[ing] that retaliation was the but-for basis" of the official's action. *Id.* at 1723 (quoting *Hartman*, 547 U.S. at 261).

But the Court carved out an exception to the "no-probable-cause requirement" in retaliatory arrest cases. *Id.* at 1727. That requirement does "not apply when a plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id.* For example, "[i]f an individual who has been vocally complaining about police conduct is arrested for jaywalking"—an offense that "rarely results in arrest"—"it would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the

arrest." *Id.* A plaintiff who shows differential treatment "addresses [the] causal concern by helping to establish that 'non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences.'" *Id.* (second alteration in original) (quoting *Hartman*, 547 U.S. at 256).

In this case, Plaintiffs have pleaded both a lack of any substantiated concern for the children's safety (which may well be the equivalent of probable cause in this context)[4] and differential treatment. These allegations together support the inference that Firth was motivated by retaliatory animus.

Plaintiffs plead that Debora's allegations—that the children "do not want to see their father, who is often angry with them, yells at them, calls them names . . . and scares them"—were not "serious" enough to warrant Firth's instructing Debora to seek sole custody. The FAC also pleads that the allegations about Capp were not

---

[4] We have not previously decided, and do not decide in this case, what the Constitution requires before a social worker may coerce a parent into entering a safety plan—as Plaintiffs appear to allege Firth did here. The two circuits that have addressed this question have held that social workers must have "reasonable suspicion" of abuse. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 482 (7th Cir. 2011) (requiring "'some definite and articulable evidence giving rise to a reasonable suspicion' of past or imminent danger of abuse" (quoting *Brokaw v. Mercer County*, 235 F.3d 1000, 1019 (7th Cir. 2000))); *Croft v. Westmoreland Cty. Children & Youth Servs.*, 103 F.3d 1123, 1126 (3d Cir. 1997) (requiring "an objectively reasonable suspicion of abuse"). If this is the correct standard, then a social worker would likely need to corroborate allegations of abuse to satisfy it. *Cf. United States v. Williams*, 846 F.3d 303, 308–09 (9th Cir. 2016) (holding that officers had reasonable suspicion when an identified tipster's information was "verified . . . through independent observation"); *United States v. Rowland*, 464 F.3d 899, 907–08 (9th Cir. 2006) (holding that agents had reasonable suspicion when they met with the informant and "corroborated the informant's tip").

substantiated. Plaintiffs allege that Prokesch "could not in any way articulate any serious (or even significant or any) allegations against [Capp]," that a judge declined to modify Capp's custody arrangement in response to Debora's allegations that their children were scared of Capp, and that a judge "confirmed that [the County] had reported to the court that the emotional abuse claims made against [Capp] were inconclusive." Accepting these allegations as true, we infer from the FAC that retaliatory rather than legitimate motives drove Firth's actions.

Plaintiffs further allege that Firth only tried to modify *Capp's* custody, even though *Debora* had engaged in unsafe behavior around the children. The FAC states that Firth instructed Debora to seek sole custody, "even though [Debora] was, at that very same time, on probation due to her recently driving under the influence of alcohol with J.C. and N.C. in the car[,] for which [Debora] was charged with child endangerment as well as a D.U.I." The FAC additionally alleges that a "family law judge came within a hair's breadth of stripping [Debora] of her physical custody." "[C]onstru[ing] the complaint in the light most favorable" to Plaintiffs, *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005), the FAC pleads that even though there was reason to be concerned about both Capp *and* Debora, Firth only ever took action against the parent who had decided to exercise his First Amendment rights.

We acknowledge that this is likely to be a very close case.[5] At summary judgment or at trial, Defendants could well marshal evidence that Firth and her colleagues were

---

[5] To underscore this point, we observe that the district court initially concluded that Plaintiffs pleaded a viable First Amendment retaliation claim, before reconsidering its position.

motivated primarily by their legal obligation to investigate allegations of child abuse, and would have made the custody recommendation for that reason alone. *See Karam*, 352 F.3d at 1194 (rejecting First Amendment retaliation claim where plaintiff's "speculation as to [] improper motive does not rise to the level of evidence sufficient to survive summary judgment"). But Plaintiffs plead that Defendants, Firth included, "were purely motivated by their desire to retaliate against" Capp, acted "without proper reason or authority" and "without reasonable probable cause," and "ma[de] false and misleading statements to retaliate against [Capp] and in order to unduly influence and threaten [Debora] to file an application with the Family court." Taking these allegations in the light most favorable to Plaintiffs, and emphasizing the liberal pleading standard afforded to pro se litigants, we conclude that Plaintiffs have plausibly alleged that retaliation was the but-for motive for Firth's actions. Plaintiffs therefore plead a plausible First Amendment retaliation claim.[6]

## B.  Clearly Established

Having determined that Plaintiffs plead a plausible First Amendment retaliation claim, we now move to the second prong of the qualified immunity analysis: whether "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (quoting

---

[6] Our conclusion that Plaintiffs have plausibly alleged but-for causation should not be read as disturbing our court's prior cases holding that plaintiffs need only plausibly allege that retaliatory animus was a substantial or motivating factor to state a First Amendment retaliation claim that survives a motion to dismiss. *See, e.g.*, *The Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019); *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016); *O'Brien*, 818 F.3d at 932, 935–36.

*Saucier*, 533 U.S. at 201). We conclude that Plaintiffs have sufficiently pleaded a violation of their clearly established First Amendment rights, and that Firth is therefore not entitled to qualified immunity.

"[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate," though there need not be "a case directly on point." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)); *see also White*, 137 S. Ct. at 552 ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" (quoting *al-Kidd*, 563 U.S. at 742)); *Reese v. County of Sacramento*, 888 F.3d 1030, 1038–39 (9th Cir. 2018) (noting that while we "do not demand a case with 'materially similar' factual circumstances or even facts closely analogous to [plaintiff's] case," existing caselaw must "demonstrate that the contours of [the] right were sufficiently clear such that 'any reasonable official in [his] shoes would have understood that he was violating it'" (third alteration in original) (first quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); and then quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015))).[7]

---

[7] Plaintiffs suggest that *Kisela*, *White*, and *Reese* are inapplicable here because they involved excessive force by police officers in violation of the Fourth Amendment. But we have applied the general principles of qualified immunity that these cases articulated in a variety of contexts. *See, e.g.*, *Hoch v. Sanzberro*, 723 F. App'x 513, 514 (9th Cir. 2018) (psychiatric technician sued for search and seizure); *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 617–18 (9th Cir. 2018) (state Department of Health officials sued for violation of Commerce Clause); *Reynolds v.*

Plaintiffs contend that the law clearly establishes a right to be free of "intentional and calculated acts of retaliation [by a government actor], with the precise details of the retaliatory acts being of secondary importance." We agree that this is the appropriate level of generality for defining the relevant legal rule. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Defendants argue that there is no clearly established right in this case because no precedent involves a social worker's "recommend[ation] that an ex-wife seek temporary sole custody of her children." But we have made clear that "[t]he precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases." *Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003). What matters "is whether the state ha[s] taken 'action designed to retaliate against and chill political expression,'" not the particular kind of action that the state has taken in retaliation. *Id.* at 975 (quoting *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989)).

In holding that Plaintiffs plead a plausible retaliation claim, we already determined that the threat of losing custody of one's children would ordinarily chill First Amendment activity. *See Mulligan v. Nichols*, 835 F.3d 983, 989 n.5 (9th Cir. 2016) (recognizing that "[i]nformal measures, such as 'the threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation,' can violate the First Amendment" (alteration in original) (quoting *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000))). It was clear at the time Firth acted that government officials were prohibited from taking retaliatory actions that would be

*Bryson*, 716 F. App'x 668, 668–69 (9th Cir. 2018) (social workers sued for removal of child).

expected to chill First Amendment activity.  *See, e.g.*, *O'Brien*, 818 F.3d at 936 (framing the relevant right as the "right to be free from retaliation," rather than the right to be free from the particularly retaliatory act that occurred, and holding that the right was clearly established).

Accordingly, because Plaintiffs have plausibly alleged that retaliatory animus was the but-for cause of Firth's conduct, Firth is not entitled to qualified immunity.  The right to be free from government action that would not have occurred absent such retaliatory animus is clearly established.  *Cf. Daugherty v. Sheer*, 891 F.3d 386, 391 (D.C. Cir. 2018) (holding that there is no "clearly established right to be free from [government] action where retaliatory motive . . . was not plausibly alleged to be the but-for cause of the [action]").  As we stated in *O'Brien*, "[r]etaliation for engaging in protected speech has long been prohibited by the First Amendment."  818 F.3d at 936; *see also Nieves*, 139 S. Ct. at 1722 ("'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." (alteration in original) (quoting *Hartman*, 547 U.S. at 256)).  A reasonable official would know that taking the serious step of threatening to terminate a parent's custody of his children, when the official would not have taken this step absent her retaliatory intent, violates the First Amendment.

Although we conclude at this early stage of the litigation that Firth is not entitled to qualified immunity, that does not necessarily mean that this case will progress to trial.  "Once an evidentiary record has been developed through discovery, defendants will be free to move for summary judgment based on qualified immunity."  *O'Brien*, 818 F.3d at 936.

## II. Other Claims

We conclude that the district court properly dismissed Plaintiffs' Fourth Amendment, Fourteenth Amendment, and *Monell* claims.

### A.  Fourth Amendment

Plaintiffs assert that Defendants violated their Fourth and Fourteenth Amendment rights based on the interviews of N.C. and J.C. while they were at school.

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  The FAC provides insufficient allegations to support Plaintiffs' contention that the interviews of N.C. and J.C. violated the Fourth Amendment. It pleads that "the children were interviewed without the consent of either of their parents, without the presence of exigent circumstances, and without a prior judicial order or warrant," and includes the conclusory assertion that "[t]he children were seized in that they were taken from their class and had no choice but to comply with the demand that they be detained and interviewed."  However, it contains no facts as to whether the interviews were conducted without either parent's permission (and, here, their mother might have consented), the length of the interviews, or the specific circumstances of the interviews.  Absent such allegations, we cannot conclude that N.C. and J.C. were impermissibly restrained.

Even if Plaintiffs had pleaded a plausible Fourth Amendment claim, Defendants would be entitled to

qualified immunity because the right of minor children to be free from unconstitutional seizures and interrogations by social workers has not been clearly established.  Plaintiffs rely on *Greene v. Camreta*, in which we held that social workers' seizure and interrogation of a child, absent a warrant, a court order, exigent circumstances, or parental consent, was unconstitutional.  *See* 588 F.3d 1011, 1030 (9th Cir. 2009).  The Supreme Court, however, vacated this portion of *Greene*, and in so doing expressly acknowledged that "[t]he point of vacatur is to prevent an unreviewable decision 'from spawning any legal consequences,' so that no party is harmed by what we have called a 'preliminary' adjudication." *Camreta v. Greene*, 563 U.S. 692, 713 (2011) (quoting *United States v. Munsingwear, Inc.*, 340 U.S. 36, 40–41 (1950)); *see also id.* (noting that "a constitutional ruling in a qualified immunity case is a legally consequential decision" and hence that "[v]acatur [] rightly 'strips the decision below of its binding effect'" (quoting *Deakins v. Monaghan*, 484 U.S. 193, 200 (1988))).

Additionally, although we determined in *Greene* that a Fourth Amendment violation occurred in that case, we nevertheless held that the social worker defendants had qualified immunity because "our precedent did not clearly establish that the in-school seizure of a student suspected of being the victim of child sexual abuse can be subject to traditional Fourth Amendment protections."  588 F.3d at 1033.  The Supreme Court specifically "le[ft] untouched the Court of Appeals' ruling on qualified immunity and its corresponding dismissal of [plaintiff's] claim."  *Camreta*, 563 U.S. at 714 n.11.  We are thus bound by *Greene* to conclude that the Fourth Amendment right Plaintiffs seek to vindicate was not clearly established.

### B. Fourteenth Amendment

The basis for Plaintiffs' Fourteenth Amendment claim is the same as their First Amendment retaliation claim: Defendants' alleged retaliatory actions, which Plaintiffs claim violated their "fundamental rights to familial association and due process."

"To establish a substantive due process claim, a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998). Here, Plaintiffs have not pleaded that Capp experienced such a deprivation. We have recognized that "[o]fficial conduct that 'shocks the conscience' in depriving parents of [a relationship with their children] is cognizable as a violation of due process," *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008)), but Plaintiffs do not allege that Capp actually lost custody of his children as a result of Defendants' alleged misconduct.[8] Capp might have been subjected to an investigation by the Agency, but that alone is not cognizable as a violation of the liberty interest in familial relations. *Cf. Woodrum v. Woodward County*, 866 F.2d 1121, 1124 (9th Cir. 1989) ("A parent's interest in the custody and care of his or her children is a constitutionally protected liberty interest, such that due process must be afforded prior to a *termination* of parental status." (emphasis added)).[9]

---

[8] Quite the contrary, they claim that, after Debora filed the ex parte application, the family court "denied the application and rebuked [the Agency]."

[9] Plaintiffs also premise their Fourteenth Amendment claim on Capp's purported inclusion on the CACI, but as explained in our

## C. *Monell*

Finally, Plaintiffs assert a *Monell* claim, based on the allegedly unconstitutional interviews of N.C. and J.C.[10]

As discussed above, we conclude that Plaintiffs failed to plead a plausible constitutional violation stemming from Defendants' interviews with the children.  Plaintiffs' *Monell* claim therefore fails.  *See Plumeau v. Sch. Dist. No. 40*, 130 F.3d 432, 438 (9th Cir. 1997) (listing deprivation of a constitutional right as an element of § 1983 municipal liability).  Moreover, even if Plaintiffs had pleaded a plausible Fourth Amendment claim, the FAC ascribes Defendants' alleged misconduct to official policy in a conclusory fashion that is insufficient to state a viable claim.  *See Dougherty*, 654 F.3d at 900 (dismissing "*Monell* and supervisory liability claims [that] lack[ed] any factual allegations that would separate them from the 'formulaic recitation of a cause of action's elements' deemed insufficient by *Twombly*" (quoting *Twombly*, 550 U.S. at 555)).

---

discussion of the First Amendment retaliation claim, we conclude that the FAC fails to plausibly plead that Capp was listed due to retaliatory intent.

[10] Although the FAC pleads that municipal "policies were the cause of violation of Plaintiffs' constitutional rights granted to them pursuant to 42 U.S.C. § 1983 . . . including those under the First, Fourth[,] and Fourteenth Amendments," the only specific policy referenced relates to "detaining and interviewing children without exigent circumstances (imminent danger of serious bodily harm), court order or consent of their parent or legal guardian."  The FAC does not indicate that the alleged First and Fourteenth Amendment violations resulted from municipal policy or custom.

**CONCLUSION**

Plaintiffs do not allege plausible § 1983 claims premised on the Fourth and Fourteenth Amendments, and their *Monell* claim is similarly insufficient. Plaintiffs do, however, plead a plausible First Amendment retaliation claim, and we conclude that Defendants are not entitled to qualified immunity on this claim.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART and REVERSED AND REMANDED IN PART.**