NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| LEAH KANDO, an individual, | No.  21-56199 |
| Plaintiff-Appellant, | D.C. No. 2:20-cv-04520-SB-E |
| v. | |
| CITY OF LONG BEACH, a local public entity; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Central District of California
Stanley Blumenfeld, Jr., District Judge, Presiding

Argued and Submitted March 17, 2023
Pasadena, California

Before:  PAEZ, MILLER, and VANDYKE, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge VANDYKE.

Leah Kando appeals the district court's grant of summary judgment to Long

Beach public officials on two claims under 42 U.S.C. § 1983. She asserts a First

Amendment claim against animal control officer Alfredo Magaña and a due

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

process claim against 911 call dispatcher Nadia Klute. We reverse as to the First Amendment claim and affirm as to the due process claim.

We review the district court's grant of summary judgment de novo. *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 854 (9th Cir. 2019). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, 'there is no genuine dispute as to any material fact.'" *United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

1. Kando argues that Magaña violated her First Amendment right to "petition the Government for a redress of grievances." U.S. Const. amend. I. She claims that, after she protested the conduct of another animal control officer, Magaña threatened to sue her. To establish a violation, Kando must demonstrate that (1) she "engaged in constitutionally protected activity"; (2) Magaña took "adverse action" against her that "would chill a person of ordinary firmness from continuing to engage in the protected activity"; and (3) there was "a substantial causal relationship between the constitutionally protected activity and the adverse action." *Ballentine v. Tucker*, 28 F.4th 54, 61 (9th Cir. 2022) (quoting *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010)).

Viewing the evidence in the light most favorable to Kando, we conclude that Kando has made a sufficient showing of each element to survive summary

2

judgment. First, she engaged in constitutionally protected activity. In the phone call with Magaña, Kando requested a complaint form and criticized the officer's behavior as unprofessional, aggressive, and offensive to taxpayers. Criticizing the government is activity that is "paradigmatically protected by the First Amendment." *White v. Lee*, 227 F.3d 1214, 1226 (9th Cir. 2000). Second, Magaña's alleged threat to sue her was an adverse action. *See Brodheim v. Cry*, 584 F.3d 1262, 1270–71 (9th Cir. 2009). It makes no difference that Kando pressed forward and filed a complaint anyway. The chilling analysis depends on the reaction of a "person of ordinary firmness," not the individual plaintiff. *See Capp v. County of San Diego*, 940 F.3d 1046, 1054–55 (9th Cir. 2019) (recognizing a chilling effect even though the plaintiff "immediately contacted" officials to protest). Third, Kando has presented evidence of causation because Magaña made the threat in direct response to her complaints about the agency.

2. Magaña is not entitled to qualified immunity. Well before the events at issue in this case, our precedent clearly established that officials violate the First Amendment when they threaten retaliatory punishment for protected activity. *See Capp*, 940 F.3d at 1059 ("[I]t was clear [in 2015] that a government actor could not take action that would be expected to chill protected speech out of retaliatory animus for such speech." (citations omitted)). In *White*, we denied qualified immunity to officials who investigated the plaintiffs for legal violations after they

3

petitioned the government to protest a housing project. 227 F.3d at 1238–39. Even though the government did not ultimately pursue litigation, we explained that "the threat of invoking legal sanctions" was unconstitutional nonetheless. *Id.* at 1228 (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963)). In *Brodheim*, we held that an official violated the First Amendment even if his statement merely "intimated that some form of punishment or adverse regulatory action would follow" from the plaintiff's protected grievances. 584 F.3d at 1271. If a veiled threat of an unidentified punishment constitutes retaliation, an overt threat of specific punishment must also suffice. Here, Magaña allegedly said that "he wanted to go to court and sue" Kando for criticizing the agency. That explicit threat of legal action in retaliation for Kando's protected complaints clearly violated the First Amendment.

Magaña's alleged threat employed the coercive apparatus of the government because it was issued by a government official over a government phone line in the course of his duty of responding to citizen complaints. The threatened legal action—which had no apparent legitimate basis—could plausibly have been understood to involve the government as well. The First Amendment protects citizens from just this sort of government abuse. It does not permit officials to threaten citizens on the government's behalf. *See Garcetti v. Ceballos*, 547 U.S. 410, 421–22 (2006) ("Restricting speech that owes its existence to a public

4

employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen.").

3. Kando argues that Klute violated due process by deliberately omitting exculpatory evidence from a 911 call report. Kando contends that the omissions were material to the decision to charge her with making a criminal threat under California Penal Code section 422. "The Fourteenth Amendment prohibits the deliberate fabrication of evidence by a state official." *Spencer v. Peters*, 857 F.3d 789, 793 (9th Cir. 2017) (citation omitted). A constitutional violation requires "(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision." *Benavidez v. County of San Diego*, 993 F.3d 1134, 1147 (9th Cir. 2021) (citation omitted).

Kando maintains that the call report erroneously failed to specify that she was concerned about intrusions into her unit rather than the larger condominium building. The report was accurate: Kando called to protest a building entry, not a unit entry, and she repeatedly referred to intrusions into the building.

Kando also argues that her threat was conditioned on an entry "without permission," and that the report omitted that phrase. Assuming Kando's allegation is correct, that omission was not material. Under section 422, a threat need only be so "unconditional . . . as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat." Cal. Penal Code § 422(a).

5

An officer had just entered the building without Kando's permission, so limiting the threat to the context of unauthorized building entries in no way negated its gravity or imminence.

Klute did omit Kando's purported retraction from her call report, but there is no evidence that she acted deliberately in doing so. When Klute spoke to a police officer shortly after the call, she told him about the purported retraction. Given that Klute readily disclosed the evidence she was allegedly trying to suppress, her omission could not have been an attempt to frame Kando.

Because Kando has not demonstrated that Klute deliberately or recklessly omitted material evidence, she has not established a due process claim.

4. The district court correctly rejected Kando's attempt to assert claims against nonparties.

The parties shall bear their own costs on appeal.

**REVERSED in part; AFFIRMED in part; REMANDED.**

*Kando v. City of Long Beach*, No. 21-56199

VANDYKE, Circuit Judge, concurring in part and dissenting in part:

I agree with the portions of the majority's decision that affirm the district court, and dissent only from its resolution of Kando's First Amendment claim. Although criticism of the government is indubitably protected speech, *see White v. Lee*, 227 F.3d 1214, 1226 (9th Cir. 2000), it is a much more difficult question whether a government official's threat to sue someone for criticizing them is the type of adverse action that can form the basis for a First Amendment retaliation claim.[1] Litigation activity is itself protected by the First Amendment, and it is far from obvious whether someone can raise a First Amendment claim against a government official for exercising (or here, threatening to exercise) their own First Amendment rights. But precisely since that question has not been "clearly" addressed or decided one way or the other in our precedent, qualified immunity applies and I would affirm the district court's decision in its entirety.

None of the cases cited by the majority "clearly establish" that a government official's threat to sue a complaining citizen can give rise to a First Amendment retaliation claim. In *Bantam Books v. Sullivan*, a Rhode Island state agency threatened publishers with investigation, informal sanctions, and possible criminal

---

[1] Like the panel majority, I assume for summary judgment purposes that Magaña did in fact threaten to sue Kando.

1

prosecution if they failed to recall publications the agency deemed objectionable. 372 U.S. 58, 59–69 (1963). *Bantam Books* involved much more than merely a threat by a government official to sue a private citizen. As the Supreme Court explained, the fundamental concern in that case was that Rhode Island had "subject[ed] the distribution of publications to a system of prior administrative restraints" that largely circumvented the judicial process, and which therefore carried "a heavy presumption against its constitutional validity." *Id.* at 70–71. That's very different from a solitary official's threat to avail himself of the courts and exercise his right to sue an individual voicing criticism.

*White* is no more on point. The officials there were denied qualified immunity because they had used aggressive *investigatory powers* over an eight-month period—including interrogations under threat of subpoena—to cudgel plaintiffs out of speaking and litigating against a housing project. 227 F.3d at 1226–29. It was those actions—not a threat to sue—that were deemed to have "violated the plaintiffs' First Amendment rights." *Id.* at 1231.

*Brodheim v. Cry* is even less relevant. 584 F.3d 1262 (9th Cir. 2009). In that case, a prison official retaliated against an inmate's repeated requests and administrative complaints by telling the inmate to be "careful what you write." *Id.* at 1264–66, 1270–71. While that ambiguous threat might have hinted at disciplinary punishment, an adverse administrative action, or a transfer to a different facility, *id.*

at 1269–70, *Brodheim* nowhere suggested that the official was threatening to file a lawsuit.

Unlike these or other cases in which the coercive apparatus of the government is leveraged to extra-judicially silence protected speech, there is nothing in the record of this case evincing that Magaña threatened to investigate, regulate, informally sanction, or even necessarily prosecute Kando.[2]  Kando only claims that Magaña threatened to sue her in response to her criticisms.  I am not aware of any cases—and neither the majority nor Kando cite any—where a court has clearly concluded that a mere threat to sue alone is sufficient for a First Amendment retaliation claim.

Presumably, the reason for the paucity of authority demonstrating any such "clearly established" right is that, while the First Amendment protects the right to complain to government officials, it also protects the right of everyone (including government officials) to sue (including suing private citizens).  The Supreme Court has repeatedly explained that the "right of access to the courts is indeed but one aspect of the right of petition" protected by the First Amendment.  *Cal. Motor*

---

[2] The record is unclear what kind of lawsuit Kando claims Magaña threatened her with.  If Magaña was merely threatening to prosecute Kando for violating the city's ordinance prohibiting dogs from being off-leash, that cannot be the basis for a First Amendment retaliation claim since the city and its officials could not be prevented from prosecuting Kando for breaking the law simply because she complained.  So while unclear, it seems much more likely that Kando is claiming Magaña threatened some type of civil lawsuit against her relating to her complaints.

*Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 509–10 (1972) (citing cases and explaining the Noerr-Pennington doctrine). "While the Noerr-Pennington doctrine originally arose in the antitrust context, it is based on and implements the First Amendment right to petition and therefore … applies equally in all contexts." *White*, 227 F.3d at 1231.

In concluding that qualified immunity does not apply, the majority invents facts contained nowhere in our record. Specifically, the majority revises Kando's vague and equivocal assertion that Magaña merely threatened to sue her into the assertion that he threatened to sue her with a lawsuit that had "no apparent legitimate basis." There are two independent problems with this—one factual and one legal.

*First*, Kando never said that Magaña threatened her with an illegitimate lawsuit. That is something the majority has just made up. While of course at the summary judgment stage we must construe disputed facts in favor of the nonmovant, *see United States v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016), that is not a license for the majority to assume Magaña threatened something that nobody has ever said Magaña threatened: a *baseless* lawsuit. All Kando stated was that Magaña said "he wanted to go to court and sue me." It is perhaps possible to read this as threatening either criminal prosecution (although that seems unlikely) or a civil lawsuit (more likely). If Magaña threatened the former—that is, if Magaña in his capacity as a government official threatened to

4

prosecute Kando for violating Long Beach's dog leash law—that justifiable action could not, as already noted, form an actionable basis for a retaliation claim. And if Magaña threatened that he or his coworker would bring a personal civil action against Kando (for, say, defamation)—which seems much more plausible—there is no basis in the record to conclude Magaña threatened to bring a *baseless* lawsuit. It is comical to presume, as the majority appears to do, that Magaña threatened to bring an illegitimate lawsuit against Kando rather than a meritorious one. So whatever type of lawsuit Magaña supposedly threatened Kando with, there is simply no basis for the majority's odd conclusion that Magaña was threatening a suit with "no apparent legitimate basis."

*Second*, the majority seems to be operating under the assumption that if Magaña *had* threatened to bring a frivolous lawsuit against Kando, that such a threat could suffice as the basis for a retaliation claim. Maybe so, as a matter of constitutional law. But you must get past qualified immunity first. And there is simply no clearly established caselaw recognizing a retaliation claim where an official responds to a citizen's behavior by threatening to sue her—*legitimate lawsuit or not*. So even if the record reflected the majority's attempted subtle revision, Kando's claim would still run squarely into qualified immunity.

And *Garcetti v. Ceballos* does not help. 547 U.S. 410 (2006). That case concerned workplace relations between a government employee and his employer,

5

not the interactions between a government official and a citizen. Specifically, the Supreme Court held that a government employee's "speech made pursuant to the employee's official duties" was not protected from employer discipline under the First Amendment. *Id.* at 413, 421–22. *Garcetti* does not support the conclusion that qualified immunity is defeated when an official threatens to either prosecute "pursuant to the employee's official duties" or bring a civil action in his personal capacity—again, even if the prosecution or lawsuit was baseless. There is simply no on-point authority for the conclusion that a threatened lawsuit, legitimate or not, is a valid basis to bring a retaliation claim against a public official.

Ultimately, this case presents a clash of First Amendment rights. Kando has a First Amendment right to complain to Magaña without that right being inappropriately chilled. And Magaña has a right to sue (and thus threaten to sue) Kando. The interplay between those rights presents a complicated question. But because Kando hasn't provided us with any remotely on-point authority addressing that question, the issue of qualified immunity in this case is an easy one. Because I would conclude that qualified immunity applies to Kando's First Amendment claim, I respectfully dissent.

6