**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| SARA DEES; L.G., a minor by and through her Guardian Ad Litem, Robert Schiebelhut; G.G., a minor by and through her Guardian Ad Litem, Robert Schiebelhut, *Plaintiffs-Appellees/ Cross-Appellants*, <br><br> v. <br><br> COUNTY OF SAN DIEGO, *Defendant-Appellant/ Cross-Appellee*, <br><br> and <br><br> SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY; CAITLIN MCCANN; SRISUDA WALSH; GLORIA ESCAMILLA-HUDIOR; COREY KISSEL, Doe 1; NORMA RINCON, Doe 2; ALBERTO BORBOA, Doe 3; DOES, 4– 100, inclusive, *Defendants.* | Nos. 17-56621 <br> 17-56710 <br><br> D.C. No. <br> 3:14-cv-00189- <br> BEN-DHB <br><br><br> OPINION |

Appeal from the United States District Court
for the Southern District of California
Roger T. Benitez, District Judge, Presiding

Argued and Submitted October 23, 2019
Pasadena, California

Filed May 27, 2020

Before:  Andrew J. Kleinfeld, Consuelo M. Callahan,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson;
Partial Concurrence and Partial Dissent by Judge Callahan

## SUMMARY[*]

### Civil Rights

The panel affirmed in part and reversed in part the district court's judgment in an action alleging that a County social worker violated plaintiffs' Fourth and Fourteenth Amendment rights during an investigation that involved interviewing minor plaintiff L.G. at her school.

Plaintiffs, Sara Dees and her minor children L.G. and G.G. alleged that their Fourth and Fourteenth Amendment rights were violated when a social worker sent a letter to the family court which falsely stated that a decision had been made to remove Sara's children from her custody.  Plaintiffs further alleged that defendants violated L.G.'s Fourth Amendment rights when the social worker interviewed L.G. at her school for 5 minutes.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that this Circuit's precedent requires that, to establish a Fourteenth Amendment claim based on a minor being separated from his or her parents, plaintiffs must establish that an actual loss of custody occurred; the mere threat of separation or being subject to an investigation, without more, is insufficient. The panel held that plaintiffs' allegations that their rights were violated when defendant sent an admittedly false letter to the family court failed to establish a Fourteenth Amendment violation. Accordingly, the district court did not err by granting summary judgment in favor of the County on this claim.

The panel held that Sara's allegation that her Fourteenth Amendment familial association right was violated as a result of L.G.'s 5-minute seizure at her school also failed to establish a claim given that Sara never actually lost control over L.G. Accordingly, the panel reversed the district court's grant to Sara of judgment as a matter of law and, in the alternative, for a new trial on that claim.

The panel held that, viewing the evidence in the light most favorable to the County and granting the County all inferences therefrom, substantial evidence supported the jury's verdict in favor of the County on L.G's Fourth Amendment claim arising from the school seizure. Thus, the panel determined that the district court inappropriately weighed the evidence when it concluded that L.G. was seized and did not (or could not) consent as a matter of law. Accordingly, the panel reversed the district court's grant of judgment as a matter of law on L.G.'s Fourth Amendment claim.

Although the panel reversed the district court's grant of judgment as a matter of law to L.G. on her Fourth Amendment claim, the panel affirmed the district court's grant of a new trial on that claim. The panel stated that this

result was not inherently contradictory and was driven by the standard of review—the district court's ruling on a motion for new trial is reviewed for abuse of discretion instead of de novo review. The panel concluded that the district court did not abuse its discretion by ordering a new trial because while substantial evidence supported the jury's verdict, the clear weight of the evidence did not compel it.

Concurring in part and dissenting in part, Judge Callahan concurred in the majority opinion affirming the district court's judgment in favor of the County employees on the claims involving the false letter, reversing the district court's grant of judgment as a matter of law on L.G. and Sara's Fourth and Fourteenth Amendment claims regarding seizure, and reversing the conditional grant of a new trial to Sara on her seizure claim. However, Judge Callahan would vacate the district court's conditional grant of a new trial to L.G. on the Fourth Amendment seizure claim. In Judge Callahan's view, the record revealed substantial evidence that supported the jury's determination, and the trial court had not indicated what evidence might undermine the jury's verdict.

**COUNSEL**

Caitlin E. Rae (argued), Senior Deputy; David Brodie, Chief Deputy; Thomas E. Montgomery, County Counsel; Office of County Counsel, San Diego, California; for Defendant-Appellant/Cross-Appellee.

Donnie R. Cox (argued), Law Office of Donnie R. Cox, Oceanside, California; Paul W. Leehey, Law Office of Paul W. Leehey, Fallbrook, California; Robert R. Powell, Powell & Associates, San Jose, California; for Plaintiffs-Appellees/Cross-Appellants.

**OPINION**

R. NELSON, Circuit Judge:

The County of San Diego appeals the district court's post-verdict grant of judgment as a matter of law on Fourth and Fourteenth Amendment claims regarding the alleged seizure of a minor, L, by a social worker. Cross-Appellants L and Sara Dees appeal the district court's grant of summary judgment on their Fourteenth Amendment claims regarding the County's false letter allegedly impairing their right to familial association.

We reverse the district court's grant of judgment as a matter of law on L and Sara's respective Fourth and Fourteenth Amendment claims regarding the seizure. We also reverse the district court's conditional grant of a new trial to Sara on her seizure claim. We affirm the district court's judgment in favor of the County employees on L and Sara's Fourteenth Amendment claims involving the false

letter.  Finally, we affirm the district court's conditional grant of a new trial on L's Fourth Amendment claim.

# I

On February 7, 2013, Ka and Ky's biological mother, Kelly Hunter, reported to San Diego County's Health and Human Services Agency ("Agency") that her ex-husband, Robert Dees, had taken naked photos of their thirteen-year-old daughter, Ka.  Hunter's referral was assigned to County social worker Caitlynn McCann.

Pursuant to Agency policy, a companion referral was created for L and G because they primarily resided in the house that Robert shared with his wife, Sara.  L and G are Sara's children from her prior marriage to Alfredo Gil.  L, a nine-year-old girl at the time, suffers from several cognitive disabilities.  She has been diagnosed with anxiety, ADHD, and is "probably on the autism spectrum."  L is also very bright, impulsive, and prone to outbursts.

McCann began her investigation by interviewing Ka and attending a police interview of Robert.  Both Robert and Ka acknowledged that Robert had taken naked photos of Ka, ostensibly at Ka's request as part of a project to document her body's changes during puberty.  The police, after completing their forensic interview with Robert, inspected the camera that had been used to take the photos.  According to Robert, the photos of Ka had been deleted by Sara's sister, who discovered them.  Robert would not allow the police to take the camera because he claimed that it also contained naked photos of him and Sara.

After McCann interviewed Robert and Ka, she interviewed L.  L told McCann that Hunter was trying to "make Rob[ert] look wrong" and that Robert had not taken

any nude photos of her.  At the end of the day, Robert agreed, at McCann's request, to move out of the home during the investigation and to produce Ka for a forensic interview.

The next day, McCann informed Gil, L and G's biological father, that he "was going to be given full custody of . . . [his] two daughters . . . [because] their step-father had taken nude photos of" Ka.  Gil picked up his daughters that day under the operative custody arrangement.  He arranged for L and G to stay at their grandmother's house during the following week, even though L and G were scheduled to stay with Sara.

Sara and Robert subsequently secured legal counsel and a hearing at which they sought "to change the custodial rights back to the . . . original custodial rights."  The family court judge agreed, over Gil's objections, and ordered the children returned to Sara pursuant to the preexisting custody arrangement.  Sara took back custody of L and G shortly thereafter.

After learning about the family court's decision, McCann's supervisor ordered McCann to wrap up her investigation.  Agency policy required McCann to complete a final welfare check on L and G, and "a lot of loose ends . . . [and] discrepancies" still left McCann suspicious that illegal activities were taking place. McCann's suspicions were not shared by the San Diego Police Department, which closed its investigation and advised McCann that the District Attorney was not seeking a search warrant for Robert's camera.  Still, McCann believed the criminal investigation was ongoing.

McCann called the Dees to arrange a final interview of L and G.  L and G's grandmother, who was staying at the Dees' home, told McCann that she was not to interview L or

G without an attorney present. Despite the grandmother's instruction, McCann went to L and G's school to interview them. McCann believed that school district policy allowed her to interview the kids at school in a case of suspected child abuse. The school district's policy does not require the social worker to notify the parents or to obtain parental consent, but the social worker must:

> 1. advise the child of the right to have school personnel present during the interview[;]
>
> 2. advise the child that (s)he may stop the interview at any time and periodically check with the child during the interview to determine if (s)he is comfortable with continuing the interview. If the child says to stop, then the [social worker] will immediately terminate the interview[;]
>
> 3. not include law enforcement in the interview[; and]
>
> 4. complete the interview within developmentally-appropriate time limits, which will never exceed 60 minutes.

McCann asked a school assistant to bring L to the administrative office. L was willing to talk with McCann. McCann told L that a school official could remain in the room, L could stop the interview at any time, and if L had any questions, McCann would try to answer them. L did not want a school official in the room during the interview and never indicated that she wanted to stop talking to McCann.

The interview lasted five minutes. McCann asked L whether Robert, despite agreeing to remain out of the house

during the pendency of the investigation, was, in fact, back in the house. McCann did not ask L directly if Robert had taken nude photos of her but understood from the conversation that no such photos existed. The interview ended "naturally" when McCann finished her questions and L indicated she did not have any questions for McCann. A school official then escorted L back to her classroom.

L's emotional state during and after the interview is disputed. According to McCann, L was "diplomatic" during the interview and was not upset immediately after the interview. Sara, who happened to be in the school when L was interviewed, disputes McCann's assessment of L's emotional state. According to Sara, L was upset after the interview, screaming "CPS is here, CPS is here."

Two days later, McCann was unambiguously informed by the police that their investigation was closed. A week later, McCann closed her own investigation, finding any allegation that L was being abused "unfounded"—meaning that she concluded, under Agency policy, there had "been no shown abuse, and there [was] no basis for the allegation."

That same day, McCann sent a letter, signed by Gloria Escamilla-Huidor and Alberto Borboa (McCann's supervisors), to the family court overseeing the custody dispute between Sara and Gil. The letter stated that "[a] decision has been made to remove the child(ren) [L and G] from the custodial parent [Sara] and place [them] with the non-custodial parent [Gil] to avoid placing the child(ren) into Polinsky Children's Center, foster home or adjunct." The statement in the letter was false because L and G were never removed from Sara's custody. At trial, the County's own expert testified that the letter was "not correct" and "ma[de] no sense." McCann testified that the quoted language was "standard language . . . [that she] couldn't

have edited . . . if . . . [she] wanted to" and that the letter "was sent on behalf of . . . [Gil], who was concerned about his children and was looking for custody." The letter was received by the family court, but the family court never acted on it. L and G have remained in Sara's primary custody since February 13, 2013.

Sara and L brought multiple claims against the County and various County employees alleging, among other things, violations of their Fourth and Fourteenth Amendment rights. In particular, Sara and L brought claims against the County employees alleging violations of the Fourteenth Amendment right to familial association by sending the false letter to the family court. The County employees moved for summary judgment on those claims. Despite noting that "McCann's conduct in preparing the March 7 letter . . . [was] alarming," the district court concluded "the letter caused no harm to Plaintiffs." Accordingly, the district court granted summary judgment to McCann, Huidor, and Borboa on Sara and L's Fourteenth Amendment claims related to the false letter.

A jury trial was subsequently held on the remaining claims. At the close of the County's case, Sara and L moved, pursuant to Federal Rule of Civil Procedure ("Rule") 50(a), for judgment as a matter of law on their respective Fourteenth and Fourth Amendment claims regarding McCann's alleged seizure of L. The district court took the motion under advisement and submitted the case to the jury.

The jury returned a verdict in favor of the County on all counts. The jury answered "No" to the question, "Did Caitlin McCann violate the 4th Amendment Constitutional rights of . . . [L] when she conducted the *school interview[]*?" The jury also answered "No" to the question, "Did Caitlin McCann violate the 14th Amendment Constitutional right of Sara Dees when she conducted the –

?"  Because the jury concluded no constitutional violations occurred, it did not reach whether McCann was acting pursuant to an official County policy, whether that policy caused the constitutional violations, or whether L or Sara were damaged by the constitutional violations.

L and Sara subsequently renewed their Rule 50(a) motion under Rule 50(b) and, in the alternative, sought a new trial pursuant to Rule 59.  The district court granted L and Sara's renewed Rule 50 motion and conditionally granted a new trial pursuant to Rules 59 and 50(c)(1).  It made the following findings:

1.  McCann seized L during the school interview;

2.  McCann's seizure of L was unreasonable because there was no "warrant, court order, parental consent, exigency, or at the very least, reasonable suspicion to seize and interview L";

3.  McCann's unreasonable seizure of L violated Sara's Fourteenth Amendment familial association right;

4.  McCann interviewed L pursuant to a County policy; and

5.  the County's policy of allowing social workers to interview children caused the constitutional violations.

The County, Sara, and L filed timely notices of appeal. Accordingly, the following claims are now before us:

1.  Sara and L's Fourteenth Amendment claim for familial interference regarding the false letter;

2.  Sara's Fourteenth Amendment claim against the County regarding McCann's seizure of L; and

3.  L's Fourth Amendment claim against the County regarding her seizure by McCann.

## II

A district court's grant of summary judgment is reviewed de novo. *O'Rourke v. N. California Elec. Workers Pension Plan*, 934 F.3d 993, 998 (9th Cir. 2019).

A district court's grant of judgment as a matter of law is also reviewed de novo. *Krechman v. County of Riverside*, 723 F.3d 1104, 1109 (9th Cir. 2013). We "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) (internal quotation marks omitted). The district court may not weigh evidence or make credibility determinations when reviewing a motion for judgment as a matter of law. *Id.* "A jury's verdict must be upheld if it is supported by substantial evidence . . . even if it is also possible to draw a contrary conclusion from the same evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007) (internal quotation marks and citation omitted).

Finally, the district court's ruling on a motion for new trial is reviewed for abuse of discretion. *OTR Wheel Eng'g, Inc. v. W. Worldwide Servs., Inc.*, 897 F.3d 1008, 1022 (9th Cir. 2018). Indeed, "[t]he authority to grant a new trial . . . is *confided almost entirely* to the exercise of discretion on the part of the trial court." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980) (emphasis added). We may reverse a district court's grant of a new trial only if the jury's

verdict is supported by the clear weight of the evidence and "must uphold the district court if any of its grounds for granting a new trial are reasonable." *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

## III

We begin with the Fourteenth Amendment claims, including Sara and L's appeal of the district court's grant of summary judgment on their claims regarding the false letter. We then turn to the district court's grant of judgment as a matter of law and, in the alternative, a new trial to Sara on her claim regarding McCann's seizure of L.

## A

After the parties fully briefed their appeals, this Court issued its decision in *Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019). In *Capp*, a father and his two children sued the County of San Diego and County social workers alleging violations of the First, Fourth, and Fourteenth Amendments. Specifically, the children alleged their Fourth Amendment rights were violated when the social workers seized and interviewed them during a child abuse investigation into their father. *Id.* at 1059–60. The father brought a separate Fourteenth Amendment claim, *id.* at 1060, alleging the County placed him on a child abuse monitoring list and encouraged his ex-wife to withhold the children from him while she sought custody in family court (which was ultimately denied). *Id.* & n.9. This Court affirmed the district court's dismissal of the Fourth and Fourteenth Amendment claims. *Id.* at 1059–60. With respect to the Fourteenth Amendment claims, we stated:

> Plaintiffs do not allege that Capp *actually lost* custody of his children as a result of

>Defendants' alleged misconduct. Capp
>might have been subjected to an investigation
>by the Agency, but that alone is not
>cognizable as a violation of the liberty
>interest in familial relations.

*Id.* at 1060 (emphasis added) (footnote omitted).

*Capp*'s holding built on *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018). In *Mann*, social workers investigating a child abuse allegation omitted exculpatory information from their application to the family court to take custody of the allegedly abused children. *Id.* at 1158. The family court granted the application, and the social workers removed the children from their parents' custody. *Id.* The social workers then took the children to a temporary shelter for children and allowed medical professionals to perform invasive medical examinations on the children, including gynecological and rectal exams. *Id.*

The parents of the children alleged that the County violated their Fourteenth Amendment substantive due process rights "when it perform[ed] the . . . medical examinations without notifying the parents about the examinations and without obtaining either parents' consent or judicial authorization." *Id.* at 1161. We reversed the lower court and agreed with the parents' position, holding "the County's failure to provide parental notice or to obtain consent violated . . . [the parents'] Fourteenth Amendment rights." *Id.* at 1164.

Reading *Capp* and *Mann* together, our Court requires that, to establish a Fourteenth Amendment claim based on a minor being separated from his or her parents, plaintiffs must establish that an actual loss of custody occurred; the mere

threat of separation or being subject to an investigation, without more, is insufficient.

## B

Applying our precedent to Sara and L's Fourteenth Amendment claims regarding the false letter, we affirm the district court, but on alternate grounds.[1]

As we have described, the mere threat by a social worker to take away a child is insufficient to support a Fourteenth Amendment claim. Furthermore, the improper conduct in *Capp*, which included falsely informing the father that he had been placed on a sex offender list and actively encouraging the mother to withhold the child and seek sole custody in family court, goes well beyond the conduct at issue here. 940 F.3d at 1060. *Mann* is the same. In that case, the bases of the parents' Fourteenth Amendment claims were the gynecological and rectal exams performed on the children without parental notification or consent. 907 F.3d at 1161. The admittedly false letter falls short of the offending conduct in *Capp* and pales in comparison to the conduct in *Mann*.

Sara's argument to the contrary is unpersuasive. She characterizes the false letter as a ticking "time bomb" waiting to go off if the family court ever reopens the case.

---

[1] The district court granted summary judgment to the County on Sara and L's Fourteenth Amendment claims regarding the false letter because "the letter caused no harm to Plaintiffs." This holding is difficult to reconcile with our precedent and the Supreme Court's holding that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey v. Piphus*, 435 U.S. 247, 266 (1978); *see also Draper v. Coombs*, 792 F.2d 915, 921 (9th Cir. 1986) (applying *Carey* to a substantive due process claim).

But that analogy is pure hyperbole, especially since the family court did nothing after receiving the letter. We have no doubt that, if the family court case is ever reopened, ample evidence—and a citation to this opinion—will dissuade the family court from taking any action based on what all acknowledge is a false representation in the letter.

Sara also claims McCann violated her Fourteenth Amendment familial association right when McCann allegedly seized L at school. This presents a closer question. But again, in light of our discussion above, we conclude that *Capp* bars Sara from successfully pursuing this claim. *Capp* plainly holds that a cause of action does not lie where the social worker is accused of seizing a child and the parent has not "actually lost" control over the child. *Id.* at 1060. Here, McCann's interview of L lasted five minutes. No evidence suggests that McCann interviewed L to coerce or otherwise intimidate either Sara or L. Instead, McCann simply intended to "wrap things up." In effect, Sara never actually lost control over L. Moreover, as we hold below, *see infra* § IV.A, the district court erred in granting L judgment as a matter of law on her Fourth Amendment claim, which also precludes Sara's Fourteenth Amendment claim on the seizure. Accordingly, we reverse the district court's grant to Sara of judgment as a matter of law and, in the alternative, a new trial.

## IV

Finally, we turn to L's Fourth Amendment claim regarding her alleged seizure at school. L's claim went to the jury, which answered "No" to the question of whether "Caitlin McCann violate[ed] the 4th Amendment Constitutional rights of . . . [L] when she conducted the –?" Post-trial, the district court set aside the jury verdict and concluded that, as a matter of law, McCann unreasonably

seized L.  In the alternative, the district court conditionally granted a new trial to L on this claim.  In doing so, the district court made several findings, but on appeal the County challenges only one finding: that the interview was an unreasonable seizure.  Because we agree on de novo review with the County that *substantial evidence* supports the jury's verdict regarding the school interview, we reverse the district court's grant of judgment as a matter of law.  But because the *clear weight of the evidence* does not support the jury's verdict, in combination with our healthy deference to the trial court, we affirm the grant of a new trial.

## A

The Fourth Amendment protects a child's right to be free from unreasonable seizure by a social worker.  *See Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 790–91 (9th Cir. 2016) (en banc).  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority . . . in some way restrained the liberty of a citizen.'"  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  "When the actions of the [official] do not show an unambiguous intent to restrain or when an individual's submission to a show of governmental authority takes the form of passive acquiescence . . . a seizure occurs if, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'"  *Brendlin v. California*, 551 U.S. 249, 255 (2007) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).  Whether a person is seized for purposes of the Fourth Amendment is a mixed question of law and fact.  *United States v. Cormier*, 220 F.3d 1103, 1110 (9th Cir. 2000).  Whether a person is being compelled to answer an official's questions, rather than

freely consenting to answer them, is a question of fact. *United States v. Ryan*, 548 F.2d 782, 789 (9th Cir. 1976).

Turning to this case, the district court inappropriately weighed the facts when it granted judgment as a matter of law. In determining whether L did not consent to the interview, the district court discounted the fact that the interview lasted only five minutes. Additionally, the district court acknowledged McCann's testimony that "L did not seem upset," but then concluded, apparently solely on the basis of Sara's testimony, that "the circumstances show that L was upset by the interview." Finally, the district court did not consider that L failed to end the conversation with McCann despite being explicitly told that she could do so. Broadly, the district court inappropriately weighed the facts before it, despite acknowledging, earlier in the proceedings, that seizure and consent are fact intensive inquires for which the jury is well suited to make the determinations.

Nor do the cases upon which the district court relied in its decision to grant L judgment as a matter of law—*Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009) *vacated in part sub nom. Camreta v. Greene*, 563 U.S. 692 (2011); *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009); *Jones v. Hunt*, 410 F.3d 1221 (10th Cir. 2005); and *Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003)—compel the conclusion that L was seized and did not consent to the interview. Each case is factually distinguishable. First, in each case a police officer either conducted the interview or was present during the interview. *Greene*, 588 F.3d at 1017; *Stoot*, 582 F.3d at 913; *Jones*, 410 F.3d at 1226; *Heck*, 327 F.3d at 510. No police officer was present during McCann's interview of L. Furthermore, the interviews in *Greene*, *Stoot*, and *Jones* lasted anywhere from one to two hours. *Greene*, 588 F.3d at 1017; *Stoot*, 582 F.3d at 915; *Jones*, 410 F.3d at 1226. In

*Heck*, the interview lasted twenty minutes.  327 F.3d at 510. Here, in contrast, McCann's interview of L was just five minutes.  To be sure, the fact that L was nine and suffers from cognitive difficulties creates a higher probability that she did not feel free to leave or may not have consented to the interview.  But, at a minimum, the factual differences between *Greene*, *Stoot*, *Jones*, and *Heck* on the one hand and this case on the other, undermines reliance on those cases here.  In short, the district court erred in finding that those cases compelled the conclusion that L was seized and did not consent *as a matter of law*.

At bottom, the district court impermissibly weighed the evidence before it and concluded that L was seized and did not (or could not) consent as a matter of law.  As the district court, Sara, and L all acknowledge, the facts both support and undercut the jury's verdict.  Viewing the evidence in the light most favorable to the County and granting the County all inferences therefrom, substantial evidence supports the jury's verdict.  None of the caselaw cited by the district court, Sara, or L supports the conclusion that, under the facts of this case, L was seized and did not consent as a matter of law.  Accordingly, we reverse the district court's grant to L of judgment as a matter of law on her Fourth Amendment claim.

**B**

Although we reverse the district court's grant of judgment as a matter of law to L on her Fourth Amendment claim, we affirm the district court's grant of a new trial.  We acknowledge the tension in this decision.  Above, we conclude that the district court erred by granting L judgment as a matter of law.  Here, we conclude that the district court properly granted a new trial on the same claim.  But such a decision is not unprecedented in this Circuit or our sister

circuits. *See Garter-Bare Co. v. Munsingwear Inc.*, 723 F.2d 707, 716–17 (9th Cir. 1984) (reversing grant of judgment as a matter of law to a defendant while simultaneously affirming the grant of a new trial to the same defendant); *Christopher v. Florida*, 449 F.3d 1360, 1362 (11th Cir. 2006) (same).

This result is not inherently contradictory and is driven by the standard of review. The district court's ruling on a motion for new trial is reviewed for abuse of discretion instead of de novo review, which we applied above. *See OTR Wheel Eng'g, Inc.*, 897 F.3d at 1022. Indeed, "[t]he authority to grant a new trial . . . is *confided almost entirely* to the exercise of discretion on the part of the trial court." *Allied Chemical*, 449 U.S. at 36 (emphasis added). The district court's decision to grant a new trial must stand unless the jury's verdict is supported by the clear weight of the evidence and we "must uphold the district court if any of its grounds for granting a new trial are reasonable." *4.0 Acres of Land*, 175 F.3d at 1139.

With this highly deferential standard of review firmly in mind, we turn to the district court's opinion. The bulk of the opinion analyzes whether Sara and L were entitled to judgment as a matter of law. On the final page of the opinion, the district court acknowledged its obligation to rule on the alternative motion for a new trial and held "the Court conditionally grants the motion for a new trial because the clear weight of the evidence does not support the verdict."

First, we dispose of the sole argument offered by the County regarding the district court's decision to order a new trial: namely, that the district court "failed to identify *how* the verdict was against the clear weight of the evidence, or what evidence it relied on in reaching that conclusion." We disagree. The district court issued a well-reasoned, though

ultimately incorrect, opinion granting judgment as a matter of law, which is, of course, a higher standard for plaintiffs to meet than the standard for a new trial. Requiring the district court to copy and paste its judgment as a matter of law analysis under a separate header for a new trial makes little, if any, sense. The district court did not abuse its discretion by failing to do so.

Second, the district court did not abuse its discretion by ordering a new trial. Properly framed, the question is whether the district court abused its discretion in concluding that the jury's verdict was not supported by the clear weight of the evidence. *4.0 Acres of Land*, 175 F.3d at 1139. The County's burden in persuading us that the district court abused its discretion is an extraordinarily high hurdle, as the Supreme Court has made clear. *Allied Chemical Corp.*, 449 U.S. at 36.

Rightfully so. The district court, having sat through all of the testimony and with the benefit of credibility determinations that cannot readily be made on a cold record, felt so strongly that the jury erred that he ordered a new trial. Moreover, the facts here support the "reasonableness" of the district court's opinion: it is at least arguable whether a nine-year old girl with cognitive disabilities, called into the administrative office of her school by a woman who she knew had the authority to disrupt her family's life, would feel empowered to leave or could have consented to the discussion. *Cf. J.D.B. v. North Carolina*, 564 U.S. 261, 272 (2011) (holding that a thirteen-year-old's age would have affected how a reasonable person in the suspect's position would perceive his or her freedom to leave for purposes of *Miranda*'s custody determination (quotations omitted)). While substantial evidence supports the jury's verdict, the clear weight of the evidence does not compel it. In short, the

district court did not abuse its discretion in concluding that the jury's verdict was not supported by the clear weight of the evidence.

## V

Sara and L's Fourteenth Amendment claims regarding the false letter are barred by our decisions in *Capp* and *Mann*, as is Sara's Fourteenth Amendment claim regarding the school seizure.  Moreover, substantial evidence supported the jury's verdict in favor of the County on L's Fourth Amendment claim.  However, the district court did not abuse its discretion in concluding that the clear weight of the evidence did not support the jury's verdict on L's Fourth Amendment claim.

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART and REVERSED AND REMANDED IN PART.**

---

CALLAHAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority opinion affirming the district court's judgment in favor of the County employees on the claims involving the false letter, reversing the district court's grant of judgment as a matter of law on L and Sara's Fourth and Fourteenth Amendment claims regarding seizure, and reversing the conditional grant of a new trial to Sara on her seizure claim.  However, I would vacate the district court's conditional grant of a new trial to L.  The majority sustains the district court's grant of a new trial holding that the district court did not abuse its discretion in deciding that the

jury's verdict was not supported by the clear weight of the evidence.  I disagree.

As noted by the majority, in *United States v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999), we held that a "trial court may grant a new trial, even though the verdict is supported by substantial evidence," and that we should "uphold the district court if any of its grounds for granting a new trial are reasonable."  But we also stated that such a grant is proper only "if 'the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice.'"  *Id.* (quoting *Oltz v. St. Peter's Community Hosp.,* 861 F.2d 1440, 1452 (9th Cir.1988)).  We noted that "[t]he corollary, of course, is that a district court may not grant or deny a new trial merely because it would have arrived at a different verdict."  *Id.* (citing *Wilhelm v. Associated Container Transp. (Australia) Ltd.*, 648 F.2d 1197, 1198 (9th Cir. 1981)).  We held that "we may find that a district court abused its discretion in ordering a new trial if the jury's verdict is not against the clear weight of the evidence."  *Id.* (citing *Roy v. Volkswagen of Am. Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990), *amended*, 920 F.2d 618 (1991)).  In *4.0 Acres*, we actually vacated the grant of a new trial, noting that "[w]here the jury's verdict is not against the clear weight of the evidence, a district court abuses its discretion in ordering a new trial."  *Id.* at 1143.

This is one of those instances where the district court abused its discretion in granting a new trial contrary to the jury's determination. The question whether "Caitlin McCann violat[ed] the 4th Amendment Constitutional right of . . . [L] when she conducted the school interview" was put to the jury. The jury, which heard all the evidence, answered "No."  The brevity of the in-school interview was not

contested. Nor was L's agreement to speak with McCann or her behavior during the interview. There was some conflicting evidence as to L's subsequent reaction to the interview, but, again, the jury heard all that evidence. Even giving all of L's witnesses the benefit of the doubt, a jury would not likely conclude—in light of the uncontested facts surrounding the interview—that the five-minute interview violated L's Fourth Amendment constitutional rights.

As the majority correctly notes in vacating the district court's grant of judgment as a matter of law, our prior decisions cited by L do not require a finding that her interview constituted an unreasonable seizure. Our most recent precedent, *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009), concerned a two-hour questioning of an elementary school girl by a social worker and an armed police officer in a private office at the girl's school. *Id*. at 1015. The social worker did not have a warrant, probable cause, or parental consent. *Id*. The defendants did not contest that the two-hour interview constituted a seizure but argued that it was not unreasonable. *Id*. at 1022. We recognized that the defendants' claim of qualified immunity required a delicate balancing of competing interests, and we ultimately held that although the two-hour interview constituted an unreasonable seizure in violation of the young girl's constitutional rights, the defendants were entitled to qualified immunity.[1] *Id*. at 1033.

---

[1] Similarly in *Stoot v. City of Everett*, 582 F.3d 910 (9th Cir. 2009), where a fourteen-year-old boy was taken out of his school class and interviewed for about two hours, the defendant officer did not contest that the interview constituted a seizure. In *Stoot*, we again affirmed the district court's grant of qualified immunity for the seizure.

Recognizing that *Greene* was a close case, what in our case supports the  determination that the jury verdict was not supported by the clear weight of the evidence?  Certainly, as the majority asserts, it "is at least arguable whether a nine-year old girl with cognitive disabilities, called into the administrative office of her school by a woman who she knew had the authority to disrupt her family's life, would feel empowered to leave or could have consented to the discussion."  Majority at 21.  But, at most, these considerations support a determination that the interview constituted a seizure.  They do not require, or inherently support, a determination that the "seizure" was unreasonable.

More importantly, what is "at least arguable" does not address the weight of the evidence.  A number of uncontested facts support the jury's verdict.  Although L suffers from several cognitive disabilities, she is very bright. She was asked if she wanted a school staff member to be present during the interview and she said no.  L was asked if she was willing to talk to McCann, and she agreed to do so. The interview lasted only five minutes, during which L answered McCann's questions and indicated that she did not have any questions for McCann.  After the interview L was escorted back to her classroom and, according to school officials, did not seem upset.[2]

My colleagues and I agree that substantial evidence supported the jury's verdict.  We not only conclude that the trial court erred in granting judgment as a matter of law by improperly weighing the evidence, but, critically, we also

---

[2] Contrary to the situation in *Greene*, there is no indication that McCann was threatening, and she was not accompanied by a police officer (a fact that was stressed in our opinion in *Greene*).

conclude that the evidence was sufficient to support the jury's verdict.  Majority at 19 ("None of the caselaw cited . . . supports the conclusion that, under the facts of this case, L was seized and did not consent as a matter of law.").  In light of this determination, for us to sustain the grant of a new trial, it should be clear what evidence is contrary to the jury's verdict.  Here, the only explanation offered by the trial court was its understanding of the applicable law, which we have held was incorrect.  Furthermore, this is not a situation where a party could not present all the relevant information to the jury or where the judge was privy to information not shared by the jury. [3]

This appeal presents a relatively unique situation.  After an issue had been referred to a jury and the jury returned its decision, the trial court granted judgment as a matter of law and conditionally granted the motion for a new trial, contrary to the jury's determination.  Then, on appeal, we hold that (1) district court erred in granting judgment as a matter of law, and (2) the jury's finding is supported by substantial evidence.  In such a situation, the grant of a motion for a new trial is an abuse of discretion unless it is clear from the record, or from the trial court's explanation, why the jury's verdict was not supported by the clear weight of the evidence.  *See 4.0 Acres*, 175 F.3 at 1143 ( "Where the jury's verdict is not against the clear weight of the evidence, a district court abuses its discretion in ordering a new trial.").  Because my review of the record reveals substantial evidence that supports the jury's determination, and the trial court has not indicated what evidence might undermine the

---

[3] There is no suggestion that any of the evidence presented was false and we see no evidence of a "miscarriage of justice."  *See 4.0 Acres*, 175 F.3d at 139.

jury's verdict, I would vacate the grant of the motion for new trial.